210    211
214    1277

# Reed *v.* Pittsburg, Carnegie & Western Railroad Company, Appellant.

*Railroads—Eminent domain—Competency of witness—Evidence—Market value.*

In condemnation proceedings to assess the value of property taken for railroad purposes, witnesses are competent to express an opinion on the value of the property, who are residents of the vicinity, and show that they have a knowledge of the property, its location, its uses, its buildings, its environments, and of prices of sales made in the immediate vicinity and of the value placed upon the property by people there.

Market value of land is generally based upon its extent, the character of its improvements, its productive qualities and upon sales of property in the vicinity.

*Appeals—Review—Excessive verdict.*

The Supreme Court will only in exceptional cases, where there is some important reason for doing so, exercise its power to reverse a judgment based on a verdict alleged to be excessive. The court will generally in cases where verdicts are large, leave the parties to the remedy which rests in the discretion of the court, to be exercised upon motions for new trials.

In a railroad condemnation case, where the proofs upon one side show a valuation of $9,000 and upon the other of $4,500, the Supreme Court will not reverse a judgment based upon a verdict of $9,000.

Argued Oct. 24, 1904. Appeal, No. 71, Oct. T., 1904, by defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. Term, 1901, No. 598, on verdict for plaintiff in case of Mary J. Reed v. Pittsburg, Carnegie & Western Railroad Company. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Appeal from report of jury of view. Before BROWN, J.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiff for $9,000. Defendant appealed.

*Errors assigned* were (1, 2) rulings on the evidence set forth in the opinion of the Supreme Court; (3) the whole charge, quoting it; (4, 5) that the court erred in not setting aside the verdict as excessive.

*W. M. Lindsay*, with him *A. M. Neeper*, for appellant.—The market value cannot be ascertained by evidence of particular

sales for a particular purpose: Railroad Co. v. Patterson, 107 Pa. 461; Railway Co. v. Vance, 115 Pa. 325; Becker v. Railroad Co., 177 Pa. 252; Friday v. Railroad Co., 204 Pa. 405; Michael v. Pipe Line Co., 159 Pa. 99; R. R. Co. v. Patterson, 107 Pa. 461.

The court should have defined what is meant by "market value." That the failure of the court to do this was to render the charge inadequate and indefinite, and, therefore, error is apparent from the decisions of this court in analogous cases: Gilmore v. Hunt, 66 Pa. 321; Keil v. Gas Co., 131 Pa. 466; Pfeiffer v. Brown, 165 Pa. 267.

A new trial should be granted upon the equities of the case, under the Act of May 20, 1891, P. L. 101, sec. 2: Smith v. Times Pub. Co., 178 Pa. 481.

*E. E. Fulmer*, for appellee.

Opinion by Mr. Justice Thompson, December 31, 1904:

The first two assignments of error raise the question whether two of the witnesses who testified on behalf of the appellee showed a sufficient knowledge of the market value of her property taken for railroad purposes by appellant, to qualify them to testify in regard to it.

The property is situate in Bridgeville and the first witness testified that he knew of sales made in that locality and named parties who made them; that he knew the property involved in this suit and described it as a piece of property located upon the main street of Bridgeville and upon a thoroughfare and that it was a good business location with a frontage of a 100 or more feet and depth of 200 feet; that a Mr. Myers had made a sale to the Wabash Railroad and that he made a sale of one of his own properties to the same company; that he knew how property was held there both as to price and value and that people generally held it from $50.00 to $100 per foot. That he had been in the real estate business and that he knew the market value in 1902 and that he knew by the prices that had been given by people who owned property there and named three persons who made such sales; that he fixed the market value from communication as to prices; that his knowledge was based upon the selling and holding prices.

The second witness testified that he lived alongside of the property of appellee and described the buildings and their condition.  He was in error as to the exact extent of its frontage. That he had inquired as to the value of real estate in the borough and that he had a general knowledge of the value of property there and that it kept advancing; that the place is a dear one and that this property is a valuable property.  In response to a question by the court, he stated that from the information that he had as to selling prices and at which property was held, he would put the value on this property at between $40.00 and $50.00 per foot, and that it was worth twice or three times as much as that.

These witnesses show a knowledge of the property in question, its location, its uses, its buildings and its environment; of the prices of sales made in the borough and of the value placed upon property by people there.  They were residents there and were therefore familiar with the value of property situate in the borough and their knowledge was derived from prices asked and sales made.  The value of properties is generally a subject of more than ordinary concern with residents of small districts.  Sales and purchases there are apt to excite unusual interest and beget a reasonably accurate knowledge of values.  The testimony shows that these witnesses possessed the knowledge necessary to qualify them to testify as to the value of the property in question and brought them substantially within the rule stated by Mr. Justice POTTER in Friday v. Penna. R. R. Co., 204 Pa. 405, as follows: "The knowledge which is essential to qualify witnesses to testify as to land values is clearly defined in Pittsburg, etc., Railway Company v. Vance, 115 Pa. 325, and reiterated in Michael v. Crescent Pipe Line Company, 159 Pa. 99.  The requirements imply familiarity upon the part of the witness with the property in question, its area and the uses to which it may reasonably be applied, and the extent and condition of its improvements. But this is not all.  Another essential, by reason of the necessity for comparison, is a knowledge of the general selling price in the neighborhood at the time.  In fixing this, regard must be had also to the rule that the general selling price is not to be shown by evidence of particular sales of alleged similar lots, but is to be fixed in the mind of the witness, from a knowledge

of the price at which lots are generally held for sale, and at
which they are sometimes actually sold, in the course of ordi-
nary business in the neighborhood.   While not easy to define
with accuracy, yet there is such a thing as market value.   And
in an inquiry such as the present, this is to be ascertained from
the testimony of those who by special knowledge, or opportunity
for observation, are in possession of the data from which a proper
estimate can be made."

It is contended that the learned trial judge erred in not de-
fining specifically the term " market value," and his failure to
do so made his charge inadequate and indefinite.   The market
value of land is generally based upon its extent, the character
of the improvements, its productive qualities and upon sales of
property in the vicinity : Pittsburg, etc., Ry. Co. v. Vance, 115
Pa. 325.   While the learned trial judge did not define market
value, his instructions were such as to clearly indicate what it
was and were adequate for such purpose.

After discussing some of the testimony and referring to that
of one of the witnesses, he said : " Just how near it (his tes-
timony) comes to the market value is for you to say.   You may
think that it is below the market value or that the real value
is very much higher."   He concludes : " When you come to
measure values as compared with side avenues and streets, out
of all this testimony, considering the character of the witnesses,
the impress of their testimony, their knowledge, bias and inter-
est, what in your judgment was a fair market value of that
property in February, 1902, buildings and all ?   The buildings
are not to be measured as the cost of new buildings, but sim-
ply as to the piece of property for sale.   What was the prop-
erty as a whole fairly worth ? "

These instructions were adequate and definite as a guidance
for the jury in its determination of the value of the property
taken, and an exact definition of " market value " superadded
would not have made them more so.

It is also contended that the verdict was excessive, and
that under the Act of May 20, 1891, P. L. 101, giving the
Supreme Court power to affirm, reverse or modify judgments,
this judgment should be reversed or reduced in amount.   This
court will only in exceptional cases, where there is some im-
portant reason for doing so, exercise the power thus conferred,

but generally will, in cases where verdicts are excessively large, leave the parties to the remedy which rests in the discretion of the lower court, to be exercised upon motions for new trials. With the proofs upon the one side showing a valuation of $9,000, and upon the other of $4,500 to $5,500, this case presents none of the impelling elements that would move this court to modify or reverse the judgment.

It is, therefore, affirmed.