Schultz *v.* Pivar, Appellant.

272

Argued March 27, 1952. Before Drew, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*Kim Darragh,* with him *George Y. Meyer,* for defendant, Pivar, appellant.

*V. J. Rich,* with him *Margiotti & Casey,* for plaintiff, appellee.

*Joseph F. Weis,* with him *Sherriff, Lindsay, Weis & McGinnis,* for defendant, Allegheny County Steam Heating Company, appellee.

*Anne X. Alpern,* City Solicitor and *Louis Dadowski,* Assistant City Solicitor, for defendant, City of Pittsburgh, appellee.

Opinion by Mr. Justice Musmanno, April 23, 1952:

On February 27, 1948, John E. Schultz, the plaintiff in this case, stepped on what is the potential ruination of every pedestrian, a sidewalk manhole cover. He plunged into it up to his hips, one leg falling totally within and the other partly out of the hole which opened up by the tilting of the cast iron disc. This happened in front of the Triangle Building at 701 Smithfield Street, Pittsburgh, and the plaintiff brought suit against the owner of the building, Lillian Pivar, and the City of Pittsburgh. Lillian Pivar brought in the Allegheny County Steam Heating Company as an additional defendant, averring that through its servants, agents and employes, it caused the accident by a negligent manipulation of the manhole cover in the process of installing and servicing steam heating equipment in the office building under its contract to do so.

At the ensuing trial, the Court granted binding instructions in behalf of the defendant City of Pittsburgh, and the jury returned a verdict in favor of the plaintiff in the sum of $7500 against Lillian Pivar, absolving the Allegheny County Steam Heating Company of all blame. The defendant owner of the building has appealed to this Court for judgment n.o.v. and for a new trial, motions requesting same having been refused by the Court below.

Who was responsible for this accident: The owner of the Triangle Building in front of which the plaintiff came to grief, or the Allegheny County Steam Heating Company which admittedly did some work in and around the manhole cover on the day of the accident?

William Putz, maintenance superintendent of the Triangle Building at the time the tilting manhole cover precipitated the plaintiff's fall, testified that some eight months prior thereto he examined this very lid, which was made of cast iron about 3/8ths of an inch thick, lipping at the edge to a thickness of 5/8 inch, and

fitting into a cast iron casting with a ¾ths inch flange.

Mr. Putz said that although the lid, which was at least 20 years old, had, because of lack of use, sealed itself into its setting, there was a device, known as a locking bar, beneath it to further insure it against tilting. When he examined this device some eight months to a year before the accident he found that its under-center metal strip and 14″ x 5″ bolt, had rusted away, and, not wanting to "waste time looking around" for the necessary bolt replacement he cut three pieces of pipe in a tripod shape and with them braced the lid. That Mr. Putz's inventive improvisation was not equal to the mechanical requirements of the situation is evidenced by the following: "Q. Now, after the accident was this tripod that you spoke about, was that up or down? A. That was down, that was laying, it collapsed in the hole. Q. It collapsed in the hole, is that right? A. Yes. Q. After the accident they weren't up, they weren't there? A. They were there but they were just leaning against the wall. THE COURT: Q. In other words, they weren't supporting the manhole cover at all, were they? A. No, sir."

The liability of a property owner for injuries caused by a tilting coal hole cover was well established in the case of *Cooney v. City of Pittsburgh*, 149 Pa. Superior Ct. 593, 27 A. 2d 490, where the Superior Court said: "Examination of the decisions reveals that less evidence is required to charge a property owner with liability for injuries caused by a tilting coal hole cover than for injuries caused by an otherwise defective sidewalk. The basis for the distinction is perhaps to be found in the fact that, whereas the maintenance of the sidewalk is a convenience to the public, the maintenance of the coal hole is for the sole convenience of the property owner. And, although the cases don't go so far as to hold he must maintain it at his risk, if a cover gives way and causes injury, the burden shifts to him

to show that he was without fault. Dickson v. Hollister, 123 Pa. 421, 16 A. 484; Posey v. National Bank of Western Pennsylvania, 243 Pa. 568, 90 A. 363; Strohm v. Haverstick, supra."

In the endeavor to unshoulder this burden, the property owner Pivar presented evidence that at about 10:30 on the morning of February 27, 1948, employes of the Allegheny County Steam Heating Company had removed this manhole cover in order to introduce into the basement a welding hose for the purpose of repairing a leak in the steam lines they had finished installing two days before. Three men were engaged in this operation. Pivar, of course, intended by this evidence to produce the inference that the Allegheny County Steam Heating Company had been negligent in its handling of the involved manhole cover.

William Putz also testified that immediately after the accident he found a piece of iron, of a half-moon shape, 4″ deep and 8″ to 9″ long, broken off from the cover. Whether this breakage was the result of the age of the hole cover or was caused through handling by the workmen of the steam heating company was not demonstrated and naturally remained a question of fact for the jury to resolve.

However, there can be little doubt that the failure of the maintenance superintendent to properly repair the locking bar was accepted by the jury as the negligence which caused the iron disc to tilt. Putz testified that the condition of the cover when he examined it eight months before the accident constituted a definite hazard: "Q. In other words, you felt it wasn't safe the way you found it? A. I wasn't taking chances. Q. Well, you felt it wasn't safe, isn't that right, Mr. Putz? A. Well, you might say that."

And it also is clear that in his reluctance to take the time to obtain the necessary bolt, Putz failed in the due care required of him under the circumstances:

"Q. Was it possible to procure a new bolt and a new locking device—A. Well, it would have been possible if I wanted to stop to take the special time to get that bolt. I know I couldn't have gotten it in Pittsburgh. Q. Such a bolt was manufactured? A. Yes, sir."

Nor did he, in the intervening eight months, attempt to procure a new bolt or locking bar.

The additional defendant Allegheny County Steam Heating Company, produced three witnesses, workers on the job, who testified they did not remove the cover, nor did they see anyone else remove it. In fact, their instructions were not to displace the cover but to insert their welding hose through an aperture some 4″ square already in the cast iron lid. Access into the basement was gained by the stairway and not through the manhole for, as one of the witnesses testified: "A man would have a hard time getting down through there; and there was nothing down there to step on, only the floor, down about seven or eight feet."

Counsel for the appellant argues in his brief that: "It was not contended by anybody nor was there any evidence to the effect that the appellant knew that the lid had been left insecure as a result of any use made of it by the Steam Heating Company." But the evidence of their own maintenance superintendent was enough from which a jury could infer lack of reasonable care. He testified that when he saw the cover removed from its setting the morning of the accident, with a barricade over the hole, he asked the Allegheny Steam Heating man to inform him when he was ready to leave, but admitted that though on the premises the entire day he did not return to that part of the pavement to see whether the lid had been replaced properly or whether it had been replaced at all.

Even if the jury had found the Allegheny County Steam Heating Company negligent, this would not necessarily save the appellant owner from liability be-

cause the owner had notice of the previous faulty condition of the manhole cover and of the use to which it was being put on the day of the accident. Furthermore, notice of the defective condition of a sidewalk is imputed to the owner of a building in much less time than is required to charge a municipality with notice, for the owner is presumed to be constantly aware of the condition of his property and any defect is thus sooner discernible to him: *McLaughlin v. Kelly,* 230 Pa. 251, 79 A. 552.

In addition, it is to be noted that had the jury found that the steam heating company employes did remove the manhole cover for its repair work, it would not necessarily follow that it would have to find that the cover had been improperly replaced. The jury could still have concluded that the accident was the result of the faulty condition of the lid.

The question of responsibility for this accident was peculiarly one for the jury, since it was dependent upon facts which were not so clear as to absolve either of the defendants of the charge of negligence as a matter of law.

The appellant contends that the Trial Judge belittled and minimized the importance of the evidence adduced against the Allegheny County Steam Heating Company. There is no zealous trial lawyer that does not at some time or other during the Court's charge believe that the judge is speaking with unnecessary emphasis in outlining the contention of his opponent and is treating cavalierly and almost sardonically the weighty arguments advanced in behalf of his own client. It is this inevitable strain and worry as to the outcome of the trial on which depends peace of mind as well as income which tells so heavily on the nervous system of any active practitioner. But there is no way for a judge to announce simultaneously both sides of the case. He must necessarily exhibit one side

of the shield and then the other, and so long as he makes clear to the jury that no matter what he states or how he states it, the jury is the sole and exclusive arbiter of the facts, he has met the duty required of him. *Lappe v. Gfeller,* 211 Pa. 462, 60 A. 1049; *Harrison v. Metropolitan Life Ins. Co.,* 168 Superior Ct. 474, 79 A. 2d 115. In this case the Trial Judge, in addition to instructing the jury that they were to decide the facts, stated to them in five different ways that they were not bound by any opinion he might seem to express. We are satisfied from a reading of the record that, although through partisan eyes the scales of justice might seem to have at times lost balance, they were truly held impartially, and that the results of the trial cannot be attributed to anything but a neutral judgment motivated only by truth and justice.

Arguing that the verdict was excessive, counsel for the appellant states that the Court below erred in permitting the jury to pass upon loss of earnings subsequent to June 1, 1949, contending that there was no evidence to connect this loss with the accident. The record shows that the plaintiff worked at the Crucible Steel Company from February 28, 1948 to March 16, 1948, and from June 1, 1948 to June 1, 1949, and then, with the exception of three days, did not work from June 1, 1949 until March 5, 1950, when he became employed by the Yellow Cab Company. In answer to appellant's counsel as to whether he, the plaintiff, left the employ of the Crucible Steel Company in June, 1949, *wholly* or *solely* because of disability resulting from the accident the plaintiff replied that he was laid off, but from this the jury could well have inferred that although the disability was not wholly and solely the result of his being laid off, it may have been *partly* due to his physical condition. In this connection reference is made to his testimony that he did not work from June 1, 1949 until March 5, 1950, with the

exception of three days, because he was still "in pretty bad shape." The plaintiff also stated: "I was still crippled when I went to Yellow Cab, and I was examined by the doctor and I told him about it, too."

The plaintiff produced evidence that as a result of the accident he sustained an injury to his back, a severe and permanent sacro-iliac sprain and traumatic arthritis. The appellant complains that the medical testimony was not legally sufficient because the doctor who testified that the accident, in his opinion, caused an aggravation of an existing arthritic condition, did not testify to the extent of any aggravation or to the length of time the effects of such aggravation would continue. In support of that contention, the appellant cites *Offensend v. Atlantic Ref. Co.*, 322 Pa. 399, 185 A. 745. In that case the jury rendered an itemized verdict in the total sum of $10,963.70, as follows: $5,500 for injuries to his person; $450 for damages to his automobile; $477.70 for medical, hospital and traveling expenses, and $4,536 for loss of earning power from March 7, 1932 to November 7, 1934. The court concluded that in the absence of any expression of opinion by medical experts as to the duration of the increased inflammation resulting from the injury, the jury could not be allowed to assess damages for so long a period of time, stating "the jury should not have been allowed to hazard a guess beyond the period shown with reasonable certainty". However, the court did say that though the doctors failed to testify as to the length of time the effects of the aggravation of the pre-existing condition would continue, "it would be legitimate to draw the inference that they did not subside immediately, warranting recovery for the suffering, medical costs and loss of earnings for a reasonable time thereafter". In the instant case there is nothing to indicate for how long a period of time the jury assessed damages. It had the right, even in

the absence of any expression of medical opinion as to the duration of the disability, to assess damages for a reasonable time, and the amount of the verdict does not so shock our sense of justice as to force us to conclude that the jury abused that right.

The appellant's counsel contends further that the failure of the plaintiff's doctor, Dr. Provost, to testify to the cause of the sacro-iliac sprain for which he treated the plaintiff resulted in a failure of proof on this issue and that, therefore, the court below erred in submitting that matter to the jury.

But no expert testimony was here needed to establish causal relationship between disability and accident. Where "there is such close connection between the accident and the injury as to satisfy a reasonable person as to the cause of the injury, the relation between the two is sufficiently shown." *Palermo v. N. East Preserving Wks., Inc.,* 141 Pa. Superior Ct. 211, 51 A. 2d 44.

Police Officer H. W. Day, who was at the scene of the mishap at the time it occurred, testified that while waiting for the ambulance to take the plaintiff to the hospital, the plaintiff told him that his back was hurt. Certainly it is not unreasonable to assume that a heavy man falling with full weight into a manhole, and stopping short in the fall with inevitable violence to the whole muscular and osseous structure, would sustain a sprain of the back such as that testified to.

In this respect, the instant case differs from those cited by appellant's counsel in support of his contention that expert medical testimony is required. In the case of *McCrosson v. Phila. Rapid Transit Co.,* 283 Pa. 492, 129 A. 568, and *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358, the issue was whether lobar pneumonia was the result of the accident. In *Fink v. Sheldon Axle & Spring Co.,* 270 Pa. 476, 113 A. 666, the question was

whether paralysis was the result of the accident, and in *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256, doubt arose as to whether an arm infection was caused by the accident. In fact, in that case the attending physician testified that in his opinion the condition was not caused by the accident.

Appellant also contends that the verdict of $7,500 was excessive. We have repeatedly held that the question of the amount of the verdict will be reviewed only in cases where so grossly excessive as to shock our sense of justice and where the impropriety of allowing a verdict to stand is so manifest as to show a clear abuse of discretion on the part of the court below in refusing to set it aside: *Quigley v. Penna. R. R. Co.,* 210 Pa. 162, 59 A. 958; *Reed v. Pittsburgh, Carnegie and Western R. R.,* 210 Pa. 211, 59 A. 1067; *Dunlap v. Pittsburgh, Harmony, Butler and New Castle Ry. Co.,* 247 Pa. 230, 93 A. 276; *Scott, Admx., v. American Exp. Co.,* 257 Pa. 25, 101 A. 96.

We conclude that in all the circumstances the verdict here was a reasonable one and the judgment is affirmed.