Frances M. ROWE and Purnell M. Rowe, her husband, Plaintiffs,

v.

A. F. LEONHARD, Emmo O. Leonhard, Joseph G. Wirtz and Frederick R. Axelson, Defendants.

Civ. No. 10340.

United States District Court
W. D. Pennsylvania.

May 31, 1956.

Marvin D. Power (of Margiotti & Casey), Pittsburgh, Pa., for plaintiffs.

William A. Challener, Jr., Pittsburgh, Pa., for Leonhards.

Joseph F. Weis, Jr., Pittsburgh, Pa., for Wirtz.

William G. Dickie, Pittsburgh, Pa., for Axelson.

MARSH, District Judge.

After a jury verdict in favor of plaintiff, Frances M. Rowe, in the sum of $5,000 and in favor of plaintiff, Purnell M. Rowe, her husband, in the sum of $6,000,[1] and against the defendant, Joseph G. Wirtz, the latter moved the court for a new trial and to open the judgment in favor of the plaintiffs and enter judgment for the defendant in accordance with his motion for directed verdict.

The motion to enter judgment for the defendant will be denied because the jury could have found facts from the evidence from which it could have concluded that the defendant Wirtz was guilty of negligence which was the proximate cause of plaintiffs' injuries and property damage. Briefly, these facts are as follows: On January 29, 1951, at about 2:45 o'clock P.M., Purnell M. Rowe, the plaintiff, was operating his Oldsmobile sedan in an easterly direction upgrade upon United States Route 30, about one mile west of Irwin. The wife plaintiff was seated in the front seat beside him. The defendant, Wirtz, was traveling in a westerly direction downgrade. At this point Route 30 is a 4-lane highway with a white line dividing the two easterly lanes from the two westerly lanes. Preceding Wirtz was a Plymouth sedan operated in a westerly direction by the defendant, Emmo O. Leonhard. Following the plaintiffs' car, going east, was a Buick sedan operated by the defendant, Frederick R. Axelson. Portions of the highway in the vicinity of the accident were slippery from ice.

Wirtz collided with the left rear part of the Leonhard car, and it could have been found that this collision was attributable to his lack of control, excessive speed in the circumstances, careless driving, or failure to stop within the assured clear distance ahead. As a result of that collision, the Wirtz car "ricochetted" across the white center line, across the two east-bound lanes and collided with the Rowe car which at that instant was moving east about ten miles per hour with its two right-hand wheels on the berm of the road. A moment later, the Axelson car collided with the rear end of the Rowe car. The evidence relied on by Wirtz to exculpate him was not accepted by the jury.

The jury found verdicts in favor of defendants, Emmo O. Leonhard and Frederick R. Axelson; the court directed a verdict in favor of defendant, A. F. Leonhard.

Defendant presents five reasons in his motion for a new trial:

1. The verdict in favor of Purnell M. Rowe is excessive.

2. The verdict in favor of Frances M. Rowe is excessive.

3. The court erred in submitting the question of the hernia causation to the jury and in permitting the jury to assess damages for the hernia condition.

---

1. Frances M. Rowe brought suit for $35,000 and Purnell M. Rowe brought suit for $15,000.

4. The court erred in overruling the defendant's objection to the hypothetical question propounded to Dr. Connolly.

5. The court erred in refusing defendant's motion to withdraw a juror who had been observed conversing with the plaintiff during the course of the trial.

We take up these reasons seriatim.

■ The court agrees that the verdict in favor of Purnell M. Rowe is excessive. The damage to his car was $1,096.37. The jury could have found that his other expenses, including his wife's medical expenses, amounted to around $950, making his total special damages about $2,050.[2]

Mr. Rowe claimed to have received an injury to his wrist which caused him some pain. This injury was very minor; there were no cuts or broken bones; there were no lost wages or diminution of earning capacity. He did not seek medical attention.

Mr. Rowe was deprived of his wife's services for a period of less than four months. Mrs. Rowe was 48 years of age. The couple lived in an apartment; there were no children; no outside help was engaged to take care of the apartment; his shirts were customarily sent to the laundry and the apartment chores according to Mrs. Rowe were not heavy. The size of the apartment and details of the household duties he performed during the four-month period were not given. According to their doctor, Mr. Rowe was "out of town for great periods of time", which was one of the reasons he requested the doctor to admit Mrs. Rowe to the hospital in May for her second operation. Mr. Rowe himself states he was absent from home "continuously".

Although awards for pain, suffering and loss of consortium are peculiarly within the discretion of the jury, these must conform to the concept of reasonable compensation. Here there was no loss of the wife's services after four months. The award in the neighborhood of $3,950 is exorbitant in the circumstances. It reflects either bias, caprice, passion or a patent misunderstanding of the instructions. We think the husband plaintiff should remit $2,800 or undergo a new trial on the issues of pain and suffering and loss of consortium.[3] Rule 59(a), Fed.Rules Civ.Proc., 28 U.S. C.A.

■ The court does not agree that the $5,000 verdict in favor of Mrs. Rowe is excessive.[4] Her clothing was damaged to the extent of $128.50.[5] Her injuries consisted of contusions to her chest, and a facial scar about 1¼" to 1½" long, extending "from the lower part of her left eye up across the bridge of the nose to the beginning of the eyebrow on the right side." The scar appeared to be well healed and did not attract attention. Testimony of headaches and watering eyes was stricken because not causally connected with the accident. She sustained a right inguinal hernia which was surgically repaired. She was hospitalized altogether about 33 days. She testified to considerable pain.

---

2. The traveling expenses of $170 from Greensburg to Newark should not be allowed under the testimony. See Record, pp. 127, 134.

3. In Grobengieser v. Clearfield Cheese Co., Inc., D.C.W.D.Pa., 94 F.Supp. 402 and Bologach v. United States, D.C.M.D. Pa., 122 F.Supp. 502, the cases cited by plaintiffs, a partial loss of consortium continued to the time of the trials, which in the former case was a period of 3½ years and in the latter case was a period of 4 years. In MacLeay v. Beckwith Machinery Co., 131 Pa.Super. 338, 200 A. 124, an estimated $700 to $950 was considered reasonable, and the injured wife was still incapacitated at time of trial. In Bond v. City of Pittsburgh, 368 Pa. 404, 84 A.2d 328, an award of less than $1,500 was given for loss of consortium, and the wife was still crippled at time of trial.

4. In 1909 a verdict of $5,000 in favor of a woman who suffered a hernia was sustained. Gascoigne v. Metropolitan West Side Elevated Ry. Co., 239 Ill. 18, 87 N.E. 883.

5. The jury was instructed that they might award these damages to Mrs. Rowe. Record, p. 327.

Whether or not the hernia was a proximate result of the accident was sharply disputed. From the size of the verdict, it must be assumed that the jury resolved this issue in favor of plaintiffs.

There was sufficient evidence to sustain this conclusion. When the Wirtz car crashed into the front part of plaintiffs' car, Mrs. Rowe was catapulted partially through the windshield. Her abdomen violently struck the dashboard. Almost immediately thereafter the Axelson car rammed into the rear part of the Rowe car, which collision forcibly returned Mrs. Rowe to the seat. There she remained for a few minutes while her husband tried to stop the blood gushing from her cut face. Immediately after the accident she said to her husband, "I feel like I am maybe internally injured". When she stepped out of the car she felt a sharp pain in the right side of the lower abdomen and a dropping sensation. She did not have a hernia prior to the accident. She complained promptly of the pain in her abdomen, and a week later her doctor confirmed the presence of the hernia. This was ample evidence to support a finding of the jury that the accident was a proximate cause of the hernia. Expert medical opinion was not necessary. Schultz v. City of Pittsburgh, 370 Pa. 271, 88 A.2d 74; Tabuteau v. London Guarantee & Accident Co., 351 Pa. 183, 40 A.2d 396; Utzman v. Pennsylvania Rubber Co., 96 Pa. Super. 463.

Defendant claims that the court erred in overruling the objection to the hypothetical question propounded to Dr. Connolly and refusing to strike the answer thereto.[6] The question and the answer thereto were as follows:

"Q. Doctor, I will pose to you a hypothetical question. If a person was in an automobile accident, and the person was of the physical build and characteristic of Mrs. Rowe, and if she sustained a forceful trauma as a result of being thrown against a member of the car; and if she simultaneously with sustaining that trauma felt pain on the right side, and also felt as if something on her right side dropped; and that that pain emanated about the right lower abdomen, and radiated into the upper part of the right thigh; based upon that premise, Doctor, would you say such a person would be susceptible to traumatic hernia?" A. I would say that is possible.

"Q. Would you say it was probable, Doctor? A. See, these are subjective symptoms on the part of an individual, and—I would say it could be probable."

Defendant contends there was no evidence that Mrs. Rowe felt pain simultaneously with sustaining the trauma. It is true that on cross-examination she said she first felt pain in her abdomen upon stepping out of the car which was 10 or 15 minutes after the collision. But there was also evidence that her abdomen violently struck the dashboard, and almost immediately she complained to her husband that she felt that perhaps she had been internally injured. There was evidence that she was in the state of shock which usually follows in the train of an automobile accident with profuse bleeding. At the trial we considered the word "simultaneously" not to mean at the exact moment when the abdomen struck the dashboard, but at the time of the accident, which could fairly include the 10 or 15 minutes that followed when she was recovering from the stunning shock and was becoming aware of the sources of her pain. It is the court's opinion that the evidence fairly tended to justify the hypothetical question and defendant was not prejudiced thereby.

Finally we think the court was justified in refusing to withdraw a juror because one of the jurors was observed talking to the husband plaintiff at the water fountain on the floor of the courthouse where the courtroom is located. The matter was carefully investigated and the court was and is still convinced

6. Dr. Connolly's testimony was by deposition.

that the conversation was not about the case and that the event produced no appreciable impact upon the juror which could reasonably be expected to cause bias or prejudice in the mind of the juror for or against either side.

An appropriate order will be entered granting a new trial unless a remittitur is filed.