Lewis M. WAGNER, Appellant,

v.

READING COMPANY.

No. 18119.

United States Court of Appeals, Third Circuit.

Argued Feb. 19, 1970.

Decided June 23, 1970.

Rehearing Denied July 27, 1970.

F. Ross Crumlish, Crumlish & Kania, Philadelphia, Pa., for appellant.

Denis V. Brenan, Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee.

Before KALODNER and VAN DUSEN, Circuit Judges, and FULLAM, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This case is before the court on appeal from a March 19, 1969, judgment on a verdict for plaintiff in an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 ff., for damages suffered by the plaintiff as the result of an accident during a train movement on the "Columbia Annex Run." Wagner was conductor of a train crew assigned on March 19, 1965, to transfer cars from a main track of the railroad onto a siding, crossing a road and entering an industrial plant in Columbia, Pennsylvania. He left the engine which his crew was using and entered the plant to make sure that it was safe to move the cars and was crushed between two cars when a fellow employee allegedly moved the train without authorization or signal from the plaintiff, who was in charge. The defendant offered evidence aimed at showing that Wagner himself had given the signal which caused the cars to move. The jury found for the plaintiff but reduced its award of $11,100. by 40% on the basis of contributory negligence. The trial judge denied plaintiff's motion for a new trial,[1] and Wagner now asserts several grounds for reversal on this appeal.

*Cross-Examination of Medical Witness*

As soon as the injury occurred, Wagner was taken to Columbia Hospital, where he was examined and operated on by Dr. Paul J. Rowan who supervised his convalescence until his release from the hospital. Dr. Rowan testified that, after x-rays were taken, exploratory surgery was performed on the plaintiff which revealed that his stomach and other internal organs had been pushed out of place, and that four of plaintiff's ribs had been fractured. He removed plaintiff's spleen and moved the misplaced internal organs to their proper position. Dr. Rowan notified defendant that the plaintiff was able to resume work on May 17, 1965, approximately two months after the accident. During his testimony he made reference to hospital reports made during plaintiff's treatment which were subsequently introduced into evidence at the close of plaintiff's case.

[1] On cross-examination, defendant's counsel was permitted to ask Dr. Rowan, over objection, if during surgery he had discovered or detected an esophageal hiatal hernia. He answered that he had not. Plaintiff contended at trial, and he has renewed his contention on appeal, that this was improper cross-examination since it was beyond the scope of his direct examination of the doctor.[2] We disagree.[3] Initially it may be observed that the determination of the extent or limitation upon cross-examination of witnesses is a matter of discretion with the trial court. See Thorp v. American Aviation and General Insurance Co., 212 F.2d 821 (3rd Cir. 1954). Where, as here, a general treat-

1. The District Court opinion of June 27, 1969, denying plaintiff's motion for a new trial, is presently unreported.

2. Because this contention is rejected on the merits, it is not necessary to pass on defendant's assertion that plaintiff's failure to raise this issue in his motion for a new trial bars him from arguing it as error on appeal. See Kiernan v. Van Schaik, 347 F.2d 775, 777 (3rd Cir.

1965); accord, Joseph T. Ryerson & Son, Inc. v. H. A. Crane & Brother, Inc., 417 F.2d 1263, 1265 n. 2 (3rd Cir. 1969).

3. Defendant's brief suggests that its interest in the condition was based on an answer by plaintiff to an interrogatory listing hiatal hernia as a medical condition for which he was going to demand damages at trial. Brief for Appellee at p. 5.

ing physician has testified on direct examination to his diagnosis and treatment of injuries he discovered in a patient's chest and abdominal region, it is no abuse of discretion to permit a question aimed at negating an injury to organs in this region. Our conclusion is supported by the statement in the x-ray reports to which Dr. Rowan referred during direct examination that no such hernia existed (see plaintiff's Exhibit P–3, x-ray report of 3/30/65).[4]

### Exclusion of Wage Records from August 1966 to Time of Trial

The plaintiff testified that, after being released to return to work in May of 1965, he could not cope with the long hours required on the Columbia Annex Run where he had been working at the time of the injury, so that he took a lower paying position in the defendant's Coatesville Yard until January 21, 1966. At that time, thinking that he would be able to perform the duties, he returned to the Columbia Annex Run, where he worked until August 1966. He left the Columbia Annex Run in that month "Because, as I stated before, after we start making a lot of overtime, and after eight hours or more I start hurting more through the chest cavity. As I get tireder I hurt more." At that time, he went to work at the defendant's Lancaster freight run, where he was not required to work overtime.

Dr. Rowan testified that he certified that plaintiff could return "to his usual work" on May 17, 1965. However, in response to a question on cross-examination which implied that Wagner had fully recovered at that point, the doctor replied:

"I concluded that he had reached maximum medical benefit, and that aside from the sequela which I have mentioned, he had recovered to the point where medical science could bring him."

He also testified that the plaintiff would have "sequela," including adhesions in the abdomen and permanent scarring in the left chest cavity, and that these residual effects of the accident would cause "distress."

When the plaintiff sought to introduce wage records to demonstrate a differential in pay between what he could have earned had he stayed at the Columbia Annex Run and what he earned after August of 1966 on the Lancaster Run and on similar work prior to trial,[5] the trial judge excluded the evidence over timely objection.

After careful consideration of the record, we have concluded that the possible loss of earnings after August 1966 should have been left to the jury and this ruling excluding the wage records was prejudicial error, requiring a partial new trial.[6] Contrary to defend-

---

4. Plaintiff's claim that it was error for the trial judge to refuse to permit him to examine a second medical witness is without merit, since the record shows that he voluntarily withdrew the witness.

5. Plaintiff's counsel in response to a request for an offer of proof, stated that he planned to ask the company's record clerk to testify:
"* * * that there is a difference in wages from what he earned when he went back to work and the wages that his replacement earned until January 21, 1966, and that after he had left the Columbia Annex job in August of 1966 until the present time the wages of those who have replaced him were different from what he had earned since then."

6. Contrary to defendant's contention (pp. 8–9 of its brief), an examination of the pre-trial memoranda does not establish any limitation on the period of plaintiff's wage loss claim. If defendant was uncertain of plaintiff's wage claim, it should have moved that a more specific statement of this claim be stated by plaintiff in an amended pre-trial memorandum. Plaintiff's Memorandum states (par. B(d) of Document 5): "Wage loss to be determined upon receipt of wage and absence statements." There is no showing of exactly when such statements were furnished to plaintiff by defendant, but such statements concerning plaintiff had been furnished by the time of the first trial in December 1968 (see notes of Official

ant's contention, plaintiff's medical witness did not testify that plaintiff was "fully recovered" when he released him for work in May of 1965. Rather, as noted above, he testified that he had recovered "to the point where medical science could bring him." In view of his testimony that certain residual effects of the accident would cause the plaintiff distress, plaintiff was clearly competent to testify to the existence of pain in his chest cavity and the jury could have believed that this pain made the longer hours on the Columbia Annex Run intolerable, as plaintiff claimed. In the context of this claim, we do not believe that medical testimony was required to establish plaintiff's inability to work when such inability was allegedly caused by pain which medical testimony had already established was the result of the accident in question. See Schultz v. City of Pittsburgh, 370 Pa. 271, 88 A.2d 74 (1952); Tabuteau v. London Guarantee & Accident Co., 351 Pa. 183, 40 A.2d

396 (1945). The case of Dixon v. Pennsylvania Railroad Company, 378 F.2d 392 (3rd Cir. 1967), relied on by the defendant, is clearly inapplicable. There a railroad signalman claimed a future loss of earnings from his alleged inability to climb, which purportedly arose from an injury suffered to his right leg. His own doctor, however, testified that the ability to climb could be determined only by climbing and the signalman had not tested his leg by attempting to climb. His employer's doctors had cleared him for climbing work about a year after the accident. We sustained the District Court's refusal to submit this issue to the jury on the grounds that a jury verdict would have been "sheer conjecture." Such was not the case here, where plaintiff had in fact attempted to perform the disputed task for some six months and medical testimony had established that the pain which he claimed necessitated his taking another position was a result of the accident.[7]

Court Reporter of hearing on 3/13/69). The transcript of the first trial shows that plaintiff claimed on December 17, 1968, a wage loss from "January 20, 1966 until the present". Also, by subpoena dated March 6, 1969, and served Friday, March 7 (ten days prior to trial, which started March 17, 1969), plaintiff demanded "all wage and absence records of the individual or individuals who worked in Mr. Wagner's place on, the Columbia Annex run from March 1965 to the present" (see Document 17). At that time defendant was well aware of plaintiff's wage claim and his counsel stated it in this language during a hearing sur Motion to Quash the Subpoena on March 13:

"What my suggestion was, apparently his claim is that the plaintiff could have worked but was unable to because of a physical disability causally related to the accident, could have worked on the Columbia Annex job from March of 1965 until the present."

It is significant that the District Court did not state that it was excluding the wage records due to a limitation on plaintiff's wage claim as expressed at the pretrial stage of the case, but the exclusion apparently was due to alleged insufficient evidence that plaintiff wanted to work on the Columbia Annex Run even if his

physical condition permitted. At N.T. 155 the court stated:

"* * * I don't have any evidence before me from which I can conclude, except a self-serving statement by himself that his not working on these various jobs was due to his physical condition."

We believe that plaintiff's contention that he would in fact have worked on the Columbia Annex Run was an issue for determination by the jury.

7. Also plaintiff contends that the trial judge erred in permitting defendant to show that the defendant had paid the plaintiff's medical bills which were introduced in evidence, especially since defendant was reimbursed for such expenses by an insurance carrier. Whereas the "collateral source rule" permits a plaintiff to recover such expenses although he has been reimbursed by his own insurance carrier or where a showing has been made that the defendant itself has paid the bills, intending a gift to the plaintiff, we have found no authority for the proposition that payment by the defendant's insurance carrier qualifies as a "collateral source" within this rule and permits plaintiff to recover for damages already paid for by the defendant. Cf. Feeley v. United States, 337 F.2d 924 (3rd Cir. 1964).

Because the above-described exclusion of evidence only concerned the damage issues, plaintiff is entitled to a new trial solely on those issues. Any award of damages at the new trial will bear interest from March 19, 1969.[8]

Since the record justifies the jury's findings of negligence and contributory negligence, the assessment of damages portion of the March 19, 1969, judgment will be vacated and the cause remanded for a new trial solely on the issue of damages, in accordance with the foregoing opinion.[9]

---

8. Since defendant's objection to the improperly excluded evidence has been the cause of the delay in the final assessment of the item of damages, interest should run from March 19, 1969, on the total damages as ultimately computed.

9. We have considered the other issues raised by the plaintiff on this appeal and find them to be without merit.