Helen SHAW

v.

OHIO RIVER COMPANY.

Civ. A. No. 73–877.

United States District Court,
W. D. Pennsylvania.

Jan. 27, 1975.

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Anthony J. Polito, Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, Senior District Judge:

By this proceeding for which jurisdiction exists pursuant to the general maritime law, plaintiff seeks maintenance and cure for various periods of time commencing June 28, 1971. The Court has afforded the parties a full and complete trial and has considered the briefs and arguments of counsel.

The facts may be briefly stated. Plaintiff was employed at all pertinent times as a cook aboard defendant's vessels. She seeks maintenance and cure for three separate claims which are premised upon a variety of illnesses which developed or arose in 1971, 1972, and 1973.

On June 28, 1971, plaintiff got off the motor vessel Beckjord on her regular crew change. On July 19, 1971, plaintiff became disabled as the result of a breast tumor and remained disabled until December 6, 1971. She was hospitalized on August 2, 1971, and on August 3, 1971, Dr. Choi performed the excision of a tumor from her right breast. She was readmitted to the hospital from August 16, 1971, through August 21, 1971, and from August 28, 1971, through September 2, 1971. During the aforesaid periods she was also treated for a restless right leg syndrome, chronic sinusitis, cystitis, a renal cyst, a duodenal ulcer and obesity.

The claim for maintenance and cure for 1972 relates primarily to treatment for hematuria, associated with a space-occupying lesion of Mrs. Shaw's right kidney. At the time in question, plaintiff had been working on the M/V Queen City and got off the vessel on her regular

crew change on March 12, 1972. The immediate problem she encountered shortly after getting off the boat was a leg cramp, which problem arose March 14, 1972. Unquestionably, the medical problems were not caused by her employment, and it has been so stipulated. She was certified fit for duty on May 5, 1972.

The claim for maintenance and cure for 1973 relates to various illnesses, including bronchial asthma and arteriosclerotic heart disease, which became manifest on or about April 6, 1973. At this time plaintiff had been working aboard the motor vessel Robert P. Tibolt. After reporting her illness, Mrs. Shaw was relieved of her duties, taken by ambulance to the Ohio Valley General Hospital at Wheeling, Wset Virginia, and was hospitalized for her condition. She has never returned to work since April 6, 1973, and has been receiving a disability pension since July 31, 1973, as well as maintenance and cure at the stipulated rate of $7 per day since October 11, 1973.

■ Plaintiff contends that she is entitled to receive maintenance and cure because all the illnesses and disabilities were sustained while she was subject to the call of service of the vessel, even though the illnesses may not have become manifest until she went on shore leave. Defendant contends, however, that no liability exists for maintenance and cure for any period during which plaintiff was on shore leave because she had already received compensation for that time, and thus payment of maintenance would constitute double recovery. Of the two positions, plaintiff's contentions seem to be more sound. The broad scope of maintenance and cure has been characterized in Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, as follows:

"It has been the merit of the seaman's right to maintenance and cure that it is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations. The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize—insubordination, disobedience to orders, and gross misconduct. On the other hand, the Master knew he must maintain and care for even the erring and careless seaman, much as a parent would a child. For any purpose to introduce a graduation of rights and duties based on some relative proximity of the activity at time of injury to the 'employment' or the 'service of the ship,' would alter the basis and be out of harmony with the spirit and function of the doctrine and would open the door to the litigiousness which has made the landman's remedy so often a promise to the ear to be broken to the hope."

It should be noted that the contract between the parties provides that free time on shore leave accumulates at the rate of one day off for each day worked on the vessel. In effect, payments made for accumulated free time constitute wages earned on the basis of time worked on the vessel. Thus defendant has no right to set off any free time against its obligation to provide maintenance and cure.

■■ The Court is satisfied that in each of the situations presented, plaintiff did sustain her various illnesses while subject to the call of service and thus would be entitled to maintenance and cure. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938). Moreover, the illness need not have been caused by plaintiff's employment. Calmar S. S. Corp. v. Taylor, supra. The fact that plaintiff was on shore leave at home at any time in question would not preclude entitlement to maintenance and cure. Calmar, supra.; German v. Carnegie-Illinois Steel Corp., 169 F.2d 715 (3d Cir. 1948).

■ Since liability exists for maintenance and cure even though the illness was not caused by the employment, defendant would not be entitled to set off payments received by plaintiff under a non-contributory policy of indemnity insurance for non-occupationally related illnesses unless any amounts received from insurance were specifically labelled

and earmarked as being in lieu of maintenance and cure under the terms of the collective bargaining agreement in force between the parties. Ward v. Union Barge Line Corporation, 443 F.2d 565 (3d Cir. 1971); Haywood v. Jones & Laughlin Steel Corp., 107 F.Supp. 108 (W.D.Pa.1952). This same principle applies to hospitalization payments made for medical expenses incurred. The insurance coverage was provided under the terms of the labor contract between the union and the employer and thus would be a fringe benefit to be considered a part of an employee's compensation. On this issue, the Honorable Daniel J. Snyder has stated in a most well reasoned opinion that:

> "Applying the principles as set forth in Thomas, [Thomas v. Humble Oil & Refining Company, 420 F.2d 793 (4th Cir.)], and Haughton, [Haughton v. Blackships, Inc., 462 F.2d 788 (5th Cir.)], it is apparent to the Court that the policy here in question was established for an independent reason outside of indemnification for liability and thus must be considered in the nature of a fringe benefit and the employer can then not set-off such amount in mitigation of its reresponsibility. Accordingly, the Plaintiff is entitled to the full amount of the Maintenance Claim of $8,208.00 without deduction for the amounts

paid by Travelers Insurance Company. Cf. Ward v. Union Barge Line, 443 F.2d 563 [565] (3d Cir. 1971) where the seaman's employer was held not entitled to credit against a claim for maintenance and cure for the 'redline time' during which the seaman was carried on the payroll while ill, in absence of a provision in the collective bargaining agreement providing for such credit. Citing Haywood v. Jones & Laughlin Steel Corp., 107 F.Supp. 108 (W.D.Pa.1952) decided by Chief Judge Gourley (now Senior Judge) holding that since the obligation to pay maintenance and cure is definite where a seaman sustains injuries in the furtherance of his employment, in the absence of a specific agreement between the seaman and his employer, that payments that are advanced subsequent to an accident are to be credited or set-off against the amount which the employer is required to pay for maintenance and cure, it would be improper to allow such credit. See Blake v. Delaware & Hudson Ry. Co., 484 F.2d 204 (2nd Cir. 1973); Wagner v. Reading Company, 428 F.2d 289 (3d Cir. 1970); Hall v. Minnesota Transfer Railway Company, 322 F. Supp. 92 (D.Minn.1971)." Seifried v. Mon River Towing, Inc., 388 F.Supp. 283 (W.D.Pa., Opinion entered March 14, 1974.)

In view of the foregoing, the Court finds that plaintiff would be entitled to recover the following:

1. Maintenance at $7/day as stipulated

| | | |
|---|---|---|
| a. | April 7, 1973, to October 10, 1973 | 187 days |
| b. | March 14, 1972, to May 5, 1972 | 53 days |
| c. | July 19, 1971, to December 6, 1971 (141 days less 12 days under U. S. Public Health Service) | 129 days |
| | TOTAL | 369 days |

2. Medical expenses as follows:

| | | |
|---|---|---|
| a. | Ohio Valley Hospital 4–6–73 to 4–13–73 | $ 522.11 |
| b. | Holzer Hospital | 3,164.05 |
| c. | Dr. Gaydosh | 50.00 |
| d. | Dr. Hand | 210.00 |
| e. | Pleasant Valley Hospital | 687.87 |
| f. | Drs. Boonsue and Choi | 75.00 |
| g. | Holzer Hospital 9–23–71 to 9–30–71 | 432.20 |
| | TOTAL | $5,141.23 |

The Court, however, finds no basis to award counsel fees or interest since payments were not made based upon a good faith belief by defendant that no maintenance and cure was due plaintiff under the circumstances.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing Opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.