## Solinsky, Appellant, v. Wilkes-Barre.

Argued November 14, 1952; reargued April 16, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Roy B. Pope*, with him *Ralph J. Johnston* and *Johnston & Pope*, for appellants.

*J. Thirwall Griffith*, with him *Howard E. Kennedy*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, October 15, 1953:

Plaintiffs instituted this action of trespass for damages for injury to the wife-plaintiff, resulting from a fall on an unlighted portion of a street in defendant-city at about 11:30 P.M. on December 24, 1948. The court below entered a compulsory nonsuit which it refused to take off. Plaintiffs appealed.

Viewing the testimony, as we must, in a light most favorable to the plaintiffs, and giving them the benefit of every inference reasonably deducible therefrom, the controlling facts are as follows: plaintiffs resided on Reno Lane, which is one block in length and connects Dock Lane with Coal Street in Wilkes-Barre.

It has a hard surface, is unpaved and has no sidewalks. The surface is about 15 feet in width, running from fence to fence of the homes fronting both sides of the street. It is used in its entirety by both vehicular and pedestrian traffic.

On December 19, 1948, there had been a reasonably heavy snowfall of five or six inches. There was no subsequent fall of snow prior to midnight of December 24. Between the fall of snow on December 19 and the time of the accident the weather was "below freezing and above freezing." It "would thaw out during the day and freeze at night." Automobiles passing over the street made ruts and ridges of a depth of three to four inches, and at no time was any part of the street free of these ruts and ridges. Its surface was in the same condition on the 24th as it was on the 21st. There was no proof of attempts by the city to clear the street or to ash it. The wife-plaintiff, who had crossed the street twice previously on the same day, left her home at approximately 11:30 P.M. on December 24 and proceeded diagonally along the bed of the street reaching near the center thereof where she slipped on a ridge of ice, fell, and was injured thereby.

The negligence charged against the city was its failure to maintain the street in a safe condition, after it had constructive notice of the alleged dangerous condition of the street.

The suggested remedy of snow removal or spreading ashes is impracticable, if not impossible. To remove the snow from *all* the streets of a city the size of Wilkes-Barre, and within a few days after a *normal snow fall,* is obviously impossible. To place ashes or cinders over all the streets of the city following a normal snow fall would be futile. Ashes and cinders sink during a thaw. Ice formed at night after a thaw would be free from such ashes or cinders.

A municipality is not liable for personal injuries sustained by an individual who falls because of a *generally slippery condition* of either a street or sidewalk, which occurs in all cities of Pennsylvania in winter due to the presence of ice and snow, accumulated as a result of *natural causes. Strauch v. Scranton,* 157 Pa. Superior Ct. 174, 42 A. 2d 96, (affirmed per curiam in 353 Pa. 10, 44 A. 2d 258) is peculiarly apposite. There a pedestrian was injured by a fall on an icy rut in an unpaved roadway. The ice was formed by *natural surface drainage.* The facts, which nearly parallel the present ones, were: "Moltke Avenue, a dirt road some distance from the foot of a mountain in an outlying section of Scranton, runs southwardly, upgrade, from its intersection with East Mountain Road. The latter is an improved highway. The natural surface drainage is from the east down the hillside through the lots of owners whose houses front on the east side of Moltke Avenue. The land to the west of the dirt road is unimproved and slopes down to a railroad. Surface water from the higher ground drains on to Moltke Avenue. In freezing weather the roadway, at times, was covered with ice. *For about a week prior to plaintiff's injury the weather was mild, alternately freezing and thawing, with some rain.* Automobiles passing over Moltke Avenue formed ruts in the ice then on the roadway. Plaintiff on the morning of January 1, 1943, walked northwardly in the roadway of Moltke Avenue and when a few feet from East Mountain Road slipped in an icy rut and fell. Although he lived in the neighborhood and used the road every day, he did not observe the hazard because of a fall of snow that morning which concealed the ruts in the ice. *There were no sidewalks along Moltke Avenue and the roadway was commonly used by pedestrians as a footway.* The city had actual as well as

constructive notice of the condition of Moltke Avenue under conditions then prevailing. The city had been requested to install a proper drainage system for the benefit of those living on Moltke Avenue but without result. The question here is whether the municipality, under the circumstances of this case, was required to provide a drainage system adequate to prevent the accumulation of ice along the street from surface water naturally flowing upon it from adjoining higher ground." (Italics supplied)

Judge HIRT, speaking for an unanimous court, said:

"A city is held to no higher duty than to keep its streets in a reasonably safe condition for use, considering the ordinary requirements of the general public (Megargee v. Philadelphia, 153 Pa. 340, 25 A. 1130) and climatic conditions which make it impossible for any city to keep its roadways free from ice at all times. McCracken v. Curwensville Boro., 309 Pa. 98, 163 A. 217. A slippery condition from an accumulation of ice which is general is not sufficient in itself to impose liability either on a property owner or on a city. Bailey v. Oil City, 305 Pa. 325, 157 A. 486. A city however may be responsible for injury resulting from an *artificial accumulation of ice, as distinguished from that resulting from natural surface drainage.* Thus a municipality has been held liable where a mass of ice due to its failure to repair a broken water main was permitted to remain after notice (Tripp v. Renovo Borough, 75 Pa. Superior Ct. 417); or because of a broken water hydrant (Decker v. Scranton City, 151 Pa. 241, 25 A. 36) or an obstructed drain (Manross v. Oil City, 178 Pa. 276, 35 A. 959) or where the source of the water was an open conduit or broken rain spout discharging from abutting property. Dean v. New Castle, 201 Pa. 51, 50 A. 310; Gross v. Pittsburgh, 243 Pa. 525, 90 A. 365; Duvall v. City of New Castle, 74

Pa. Superior Ct. 573; Julian v. Philadelphia, 147 Pa. Superior Ct. 323, 24 A. 2d 69." (Italics supplied)

In *Hendrickson v. Chester City,* 221 Pa. 120, 70 A. 552, this Court said, per curiam: "It was not shown that the place of the accident was essentially or continuously dangerous, though it might become so from time to time when the ice melted in the day and froze in the night. There was no accumulation of ice or snow that remained there all the time. This resulted in a temporary and changeable condition dependent on the variation of the weather and it appeared that on the day preceding the evening of the accident the ice had melted and the street was clear . . . ."

An excellent exposition of this principle may be found in 25 Am. Jur. 800, Sec. 519: ". . . The reasons commonly given for so holding are that it is not one of the law's reasonable requirements that a municipality should remove from the many miles of walks the natural accumulation of ice and snow, because such a requirement is impracticable from the nature of things, and that when these conditions exist, they are generally obvious, so that travelers know of them and assume the risk. Under the general rule, a municipality is, ordinarily, under no obligation to sprinkle its sidewalks or streets with ashes, sand, or other substances, to remedy a general condition of slipperiness due to natural causes . . . ."

This Court so held in *Bailey v. Oil City,* 305 Pa. 325, 157 A. 486, where we said (p. 327): ". . . This is so because of the practicable impossibility of keeping cartways and sidewalks free from ice in this climate during the winter season. Rains followed by freezing often cover an entire city with ice in a few hours, as does the melting of snow during the day and freezing at night. It would therefore place an unreasonable and practically impossible burden upon

a city to require the maintaining of its streets free from ice; this the law does not require."

Even had it been practical or possible to have removed the snow from this street immediately after its fall, *the city would also be required to remove the snow from all its other streets.* This relatively infrequently traveled one block lane certainly would not have taken precedence over main streets of this busy city. See *Beebe v. Philadelphia,* 312 Pa. 214, 219, 167 A. 570. A jury will not be permitted to substitute its judgment for that of the city in selecting streets first to be cleared.

A distinction exists between a situation created by a *natural cause* and one arising *artificially,* i.e., such as results from overflowing drains, sewers, dripping eaves, etc. Should a *street* become unsafe because of a dangerous accumulation of ice and snow following a sewer stoppage (*artificial cause*) of which the city had actual or constructive notice, the municipality may become liable for injuries sustained by a pedestrian: *Keiser v. Philadelphia Transportation Company,* 356 Pa. 366, 51 A. 2d 715, and the cases therein cited.

The injury here complained of took place in a *street.* A municipality is only secondarily liable for an injury due to an icy or dangerous *sidewalk.* It is the property owner who is *primarily* liable for the removal of ice and snow upon the *sidewalk*: *Vinnacombe v. Philadelphia and American Stores Co.,* 297 Pa. 564, 147 A. 826; *Koerth v. Turtle Creek Borough,* 355 Pa. 121, 49 A. 2d 398; *Brady v. Philadelphia,* 156 Pa. Superior Ct. 607, 41 A. 2d 355.

The limit of a municipality's obligation to remove snow and ice formed by the *elements* has been well defined by this Court. Justice WALLING in *Bailey v. Oil City,* supra, (at p. 327) said: ". . . A municipality is, in general, not liable for accidents resulting from

the icy condition of its streets and walks . . . It is, however, a city's duty to cause the removal from the walks of such substantial ridges or hills of ice or snow as constitute an *obstruction to travel*. . . ."

*Beebe v. Philadelphia,* 312 Pa. 214, 167 A. 570, stated the rule. Justice (later Chief Justice) SCHAF-FER said (p. 216): "It is to be remembered that the question to be determined is not one of safety for the traveler but of secondary negligence on the part of the city . . . Where . . . the only alleged negligence is, as here, permitting the accumulation through the action of natural forces of dangerous ridges of ice, the plaintiff must show . . . that there is such a condition as to constitute a *serious obstruction* to traffic . . . ." (Italics supplied)

The rule appears to be one of general application. See 63 C. J. S. Municipal Corporations sec. 813: "Ordinarily a municipal corporation is not liable for failure to remove snow or ice as long as they exist in their original and natural state, and no action will lie for injuries caused by a mere slippery condition of a sidewalk due to a smooth coating of ice or snow, but the municipality may be liable in case of snow or ice allowed to pile up in drifts or to form in ridges, or where the surface is rough and uneven so as to constitute a *dangerous obstruction*." (Italics supplied)

What the Superior Court said in *Strauch v. Scranton,* supra, at p. 180, has equal application to the present facts: "Perhaps the city should, in this case as the lower court suggests, improve conditions for pedestrian travel on Moltke Avenue but whether by means of an adequate drainage system at the expense of the city or by ordering the construction of sidewalks at the cost of property owners, in our opinion, is a matter within the city's discretion under the evidence in this case."

The judgments are affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On Sunday, December 19, 1948, snow fell in Wilkes-Barre, Pennsylvania.

The snow brought with it the natural corollaries of white blanketed streets, glazed surfaces, and the usual wintry hampering of movement, both pedestrian and vehicular, on the thoroughfares of the city. The six inch fall, however, while impeding traffic to a degree, did not immobilize it, and automobiles ploughed through the accumulation of flakes, leaving treads and tracks in their frothy wake.

On the night of December 24th, at about 11:20 o'clock, Mrs. Genevieve Solinsky, who lived on Reno Lane, left her home to attend Christmas Eve mass, to be celebrated at the Holy Trinity Church located at the corner of South and South Meade Streets, several blocks away. After taking some 15 to 20 steps she slipped on a ridge of ice, fell and was injured. She and her husband brought suit against the City of Wilkes-Barre averring negligence in its maintenance of Reno Lane. At the termination of the plaintiff's case in the trial before the Court of Common Pleas of Luzerne County, the Court entered a compulsory nonsuit which it refused later to take off. From that refusal an appeal was taken to this Court.

The crucial question before us is whether the admitted ridges and hills of ice on Reno Lane were there for a sufficient period of time to visit constructive notice on the municipality as to their existence and potential peril to man and vehicle utilizing the roadway, for Reno Lane had no sidewalk. To answer that question, there must naturally first be an understanding as to when the glacial impediment first made its appearance.

The learned court below in its opinion refusing to lift the nonsuit declared that the ruts of ice on which

Mrs. Solinsky fell were caused by the cold weather of Thursday congealing the snow which melted because of a thaw on Wednesday. But this meteorological conclusion ignored the testimony of the plaintiff that from Sunday, December 19th to Friday, December 24th, Reno Lane was never free of ice and snow. It also discarded the evidence that the moving traffic on Reno Lane, aided by the sunlight of the day, had chopped, softened and churned the snow into little hills, valleys and other surface irregularities which, then, visited by the frost and freeze of the night, solidified into ridges and mounds of ice.

The lower court's decision apparently also swept away without consideration the definitive testimony of the husband-plaintiff that already on Tuesday, December 21st, there was a hardness to the ruts and ridges caused by the tire marks in the snow, and the testimony of the witness William Danowski that the ruts and ridges he saw on Friday were of the same character as those which came to his attention on Tuesday afternoon.

Is the lower court's evaluation and interpretation of the testimony so indisputably correct that reasonable minds cannot possibly differ as to its meaning and implications? If it is not, the case should have been submitted to the jury.

"A nonsuit may be entered only in a clear case. If there is doubt of the inferences that may be drawn from the oral evidence, it must be submitted to the jury. In passing on a motion to nonsuit and in reviewing the refusal to take off a nonsuit, the oral evidence must be regarded in the light most favorable to the plaintiff, who must receive the benefit of every fact the jury might reasonably infer in plaintiff's favor from the evidence received or erroneously excluded: Metzgar v. Lycoming Twp., 39 Pa. Superior Ct. 602;

Malone v. Marano, 326 Pa. 316, 192 A. 254; Stinson v. Smith, 329 Pa. 177, 196 A. 843." *Kimble v. Wilson,* 352 Pa. 275, 42 A. 2d 526.

Applying the rule above mentioned, the jury in this case could have found that the icy irregularity which tripped the wife-plaintiff formed soon after the snow-fall of Sunday, December 19th, and, as a result of the low wintry temperature, remained practically intact (changing only in midday) up to the time the plaintiff fell on the night of Friday, December 24th.

Assuming that the jury so found, could it then also have concluded that this five day interval constituted sufficient notice to the City of Wilkes-Barre of the icebound dangers on Reno Lane?

In *Reed v. Schuylkill Haven,* 22 Pa. Superior Ct. 27, the evidence warranted a conclusion that the condition which caused the plaintiff to fall endured from three days to a week. The Superior Court there said:

"The length of time, during which the icy condition of the crossing which caused the accident to the plaintiff continued, was of itself such evidence of constructive notice to the municipal authorities as would carry the case to the jury: Dean v. City of New Castle, 201 Pa. 51."

In *Dean v. City of New Castle,* 201 Pa. 51, 50 A. 310, the evidence indicated that the municipality had had actual notice of the circumstances involved for two or three days. This Court held that the issue involved was properly submitted to the jury because the evidence "tended to show that the ridge of ice had existed on the sidewalk for sufficient time to *imply* notice to the city, even if there was not notice in fact."

In *Llewellyn v. Wilkes-Barre,* 254 Pa. 196, 98 A. 886, the trial court left to the jury the question

as to whether the open appearance of a certain ridge of ice for five days provided adequate constructive notice to the city, and this Court affirmed the judgment entered upon the verdict for the plaintiff.

The fact that there may have been intermittent thawing and freezing, changing the formation of the ruts and ridges from day to day, would not relieve the municipality from liability even if it be assumed that the plaintiff failed to prove when the particular mound of ice upon which she fell came into being. It was sufficient that the city had constructive notice of the general dangerous condition on Reno Lane.

The Supreme Court of Iowa, studying the problem here posed, in its case of *Parks v. City of Des Moines,* 195 Iowa 972, 191 N.W. 728, resolved the issue in a well-expressed opinion, which said, inter alia: "But the evidence shows that, from a time soon after the snow fell, for substantially four days, because of the travel and tramping over the snow, and the thawing and freezing, it had become packed and icy, and was rough, rounded, uneven, and in a condition substantially different from the way the snow fell naturally. A jury could have found from the evidence that during this entire time such was the condition, though it may have changed somewhat from day to day. They could have found that such was the condition at the time plaintiff fell. The evidence is by no means conclusive that the condition of the walk which resulted in plaintiff's fall was caused by a thaw within a day or two prior thereto which materially changed the rough and dangerous condition, which, as said, had existed for at least four days. At least, the question was for the jury."

In support of its position of non-liability, the defendant here leans heavily on the decision in the case

of *Beebe et al. v. Philadelphia*, 312 Pa. 214, but that case melts, under the sunlight of analysis, to the point of complete inapplicability to the facts before us here. There the assumed constructive notice ran from 3 o'clock of a Monday afternoon to 6 o'clock of the Tuesday afternoon immediately following. The accident happened in the large metropolis of Philadelphia with its interminable stretches of sidewalks so that, as the Court indicated: "It could not be reasonably said that the city would have violated its duty to inspect its 4,000 miles of sidewalk, and where the snow had not been cleared away from them, to cause its removal between three o'clock Monday afternoon and six o'clock on Tuesday evening when the plaintiff fell. Such a lapse of time is not sufficient to visit the city with constructive notice of the alleged defective condition of the pavement: Swan v. Indiana Boro., 242 Pa. 596."

While size of the municipality does not change the principle involved, it is not unreasonable to conclude that in a city of less territorial extent and smaller population, five days' persistence of a danger is sufficient time within which to put the authorities of the city on constructive notice that an accident can happen at the site of a dangerous condition.

The defendant-appellee argues that the plaintiff should not recover in any event because she was guilty of contributory negligence. This again would be a question of fact for the jury. It cannot be said as a matter of law that Mrs. Solinsky was negligent because she went out at night to attend church services and that she traversed a dangerous lane when no less dangerous route was indicated. There is no evidence that she did not proceed with caution in the circumstances. The street was poorly lighted and there was no obligation on her part to remain at home on Christmas Eve, (thus failing in her religious obligations),

just because the City had failed in its duty to maintain its streets properly.

In *Keiser v. Philadelphia Transportation Co.*, 356 Pa. 366, 51 A. 2d 715, this Court said: "Plaintiff did not ignore a known dangerous condition. She attempted to walk cautiously over the crosswalk as she had done on many days previous to the accident when substantially the same icy condition prevailed. An alternate safer route was not shown to exist. The testimony showed that the other available routes were at least as dangerous. It was for the jury to determine whether or not plaintiff exercised proper care in passing over the crosswalk at this intersection, notwithstanding its icy condition. She was not obliged to remain at home merely because the city failed to keep open its sewer and remove an obstruction from its streets, on the pain that if she ventured upon the sidewalks or streets and was injured through the negligence of the municipality she cannot recover: Evans v. Philadelphia, 205 Pa. 193, 54 A. 775."

The matters of defendant's negligence and plaintiff's contributory negligence being questions of fact for the jury to determine, I would take off the nonsuit.