77 N.J. Super. 481 (1962)
187 A.2d 22
MARGARET BERNAL AND ALBERTO BERNAL, HER HUSBAND, AND ALBERTO BERNAL, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
CITY OF CLIFTON, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1962.
Decided December 21, 1962.
*482 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Robert E. Pollan argued the cause for appellants (Messrs. Hammer & Hammer, attorneys; Mr. Pollan, on the brief).
Mr. Donald L. Berlin argued the cause for respondents (Messrs. Stevenson & Willette, attorneys; Mr. Berlin, of counsel and on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff Margaret Bernal (hereafter Bernal) and Alberto Bernal, her husband who sued per quod, appeal from a judgment of the Superior Court, Law Division, granting defendant's motion for an involuntary dismissal at the close of the entire case.
It is urged before this court that the evidence of negligence against the municipal defendant City of Clifton (hereafter city) was sufficient to present a jury question.
On the morning of February 16, 1961, at approximately 7:45 A.M., Bernal fell and fractured her elbow as she was walking in the public street (fronting her home) toward her car "parked down the side of the house in a parking space." It was snowing at the time of the accident, and one to two inches of fresh snow had fallen during the early morning of that day. There was an additional accumulation of snow and ice, the result of a previous storm on February 3. The severity of the earlier snowfall is indicated from Bernal's testimony:
"Q. Do you remember the volume of snow that fell? [February 3, 1962]
A. It was quite a bit. I don't recall exactly.
Q. If I told you that it was approximately 20 inches of snow, would that be accurate?
A. I don't recall exactly. I know it was quite a bit.
Q. Could we say it was one of the biggest snowstorms we have had in the last couple of years?
A. I believe so."
*483 She described the mishap on February 16 in these words:
"I just went flat on my back. My foot seemed to catch on something in the road. I didn't know what it was at the time and I got up and looked and saw it was like an accumulation of sand and ice under the snow. It caused me to catch my foot in it and caused me to fall."
and in her testimony referred to "ruts" which were characterized as "an accumulation of sand and ice; ice mostly and sand along with the ice."
The only witness proffered by the city was Arthur W. Mazowiecki, its superintendent of public works, who had been with the city for 32 years and was in charge of road maintenance, ice control and snow removal. He had taken courses at Rutgers and New York Universities, and also a course by the American Public Works Administration, which "included the area of snow removal and safety during snowstorms." Mazowiecki denied that the city ever used sand in its ice-control operations, explaining:
"We use cinders with about five per cent mixture of salt just to keep it flexible. * * * Cinders have a better chemical action than sand could ever hope to be and for that reason it is used and isn't removed off the street because the chemical action stays with it, so that any future storms that come along, it then has its immediate traction to enable vehicles to travel on the roads. This is general practice by all cities insofar as snow and ice control is concerned when they use cinders."
On cross-examination he said that such cinders would have a long-time effect, would be washed away on occasions by rain, and "[s]ometimes, finally in the spring when the winter season is over then the sweepers go out and they are swept up." When interrogated by the court as to whether on the morning of February 16 there were ruts caused by accumulations of cinders and salt underneath the snow, he replied, "There may have been ruts, but certainly not from the cinders, because there is not that much cinders applied."
The same witness further testified that the street in question (Mt. Washington Drive) was cindered on February 3, *484 1961, and that the area was again cindered on February 16, "between 4:30 and 7:30 A.M." Under continued examination it was developed:
"Q. Now, sir, do you know of any method whereby cinder may be removed from a street while there is still snow on the street?
A. No, I don't know of any such method. To my knowledge there is none that exists.
Q. You don't know of any such thing or you don't know whether there has been talk?
A. There is no known method to my knowledge."
There was no evidence offered to show that under the existing circumstances the methods employed by the city were not proper.
We cannot impose upon a municipality a broad and comprehensive duty to remove instantaneously from the public thoroughfares all snow and ice as the same are deposited by nature. There are certain inherent risks that the citizenry must assume when they pedestrianize the highways during inclement weather. In a matter litigated in Pennsylvania, where plaintiff slipped on ice in a public street commonly used by pedestrians as a footway, the court declared:
"A city is held to no higher duty than to keep its streets in a reasonably safe condition for use, considering the ordinary requirements of the general public * * * and climatic conditions which make it impossible for any city to keep its roadways free from ice at all times." Strauch v. City of Scranton, 157 Pa. Super. 174, 176, 42 A.2d 96, 97 (Super. Ct. 1945), affirmed per curiam 353 Pa. 10, 44 A.2d 258 (Sup. Ct. 1945). See also Solinsky v. City of WilkesBarre, 375 Pa. 87, 99 A.2d 570 (Sup. Ct. 1953).
In the instant case the trial judge stated in his determination, "I cannot find that there is evidence of active wrongdoing on which the jury could conclude that the plaintiff is entitled to recover and therefore I must grant the defendant's motion." We have scrutinized the record and agree with that conclusion. There is a total absence of any proof of active wrongdoing or positive misfeasance. See generally McAndrew v. Mularchuk, 38 N.J. 156, 162 (1962); *485 Hayden v. Curley, 34 N.J. 420, 424 (1961); Schwartz v. Stockton, 32 N.J. 141, 147 (1960); Cloyes v. Delaware Tp., 23 N.J. 324, 329 (1957); Weintraub and Conford, "Tort Liability of Municipalities in New Jersey," 3 Mercer Beasley L. Rev. 142 (1934).
The judgment of the trial court is affirmed.