389 A.2d 1186

**Albert R. STROTHER, Appellant,**

v.

**Robert M. BINKELE and Helen C. Binkele, Appellees.**

Superior Court of Pennsylvania.

Argued June 16, 1977.

Decided July 12, 1978.

---

Daniel H. Shertzer, Lancaster, for appellant.

Christopher S. Underhill, Lancaster, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order refusing to take off a nonsuit in a trespass action to recover for personal injuries suffered as a result of a slip and fall.

■ In considering an appeal from a refusal to take off a nonsuit, we must view the evidence in the light most favorable to the appellant, resolving every conflict in his favor, and giving him the benefit of every reasonable favorable inference. *Wilson v. Howard Johnson Restaurant*, 421 Pa. 455, 219 A.2d 676 (1966); *Fegely v. Costello*, 417 Pa. 448, 208 A.2d 243 (1965). Viewed in this light, appellant's evidence was to the following effect.

On February 13, 1975, appellant, accompanied by his wife, his brother, and a friend, drove to the unemployment office on Lime Street in the City of Lancaster. The unemployment office is a long narrow building with the narrow front section of the building facing Lime Street. A driveway runs along the side of the building, and there is an entrance on the long side towards the rear of the building from Lime Street. The entire building is surrounded by a sidewalk, and there is a railing at the edge of the sidewalk in front of the side entrance.

Appellant parked his car alongside the curb at the building's side. The front of the car was about 3 to 4 feet from the railing, while the rear of the car was about 10 to 12 feet from the entrance. Appellant got out on the driver's side of the car, and proceeded around the rear of the car and onto the sidewalk, where he fell. Appellant stated that the entire sidewalk was covered with snow and ice; his description of this condition will be discussed more fully below.

–A–

■ In appraising the sufficiency of this evidence, we must apply a three part test:

Where a property owner is charged with negligence in permitting the accumulation of snow or ice on his sidewalk, the proof necessary to sustain such a charge has been clearly defined by our decisional law. It is encumbent upon a plaintiff in such situation to prove: (1) that snow and ice had accumulated on the sidewalk in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians

travelling thereon; (2) that the property owner had notice, either actual or constructive, of the existence of such condition; (3) that it was the dangerous accumulation of snow and ice which caused plaintiff to fall. Absent proof of all such facts, plaintiff has no basis for recovery. *See Miller v. City Ice and Fuel Co.*, 363 Pa. 182, 184, 69 A.2d 140; *Milburn v. Knights of Columbus Home Association*, 167 Pa.Super. 509, 511, 76 A.2d 466.

*Rinaldi v. Levine*, 406 Pa. 74, 78–79, 176 A.2d 623, 625 (1962).

The lower court expressed some doubt in regard to the first part of this test, and held that appellant had failed to satisfy the other two parts.

–1–

■ With respect to the proof of an unreasonable obstruction to travel:

"The ridge must be shown to be of such substantial size and character as to be a danger to the public, not a mere uneven surface caused by walking upon the ice. The proof must describe the alleged ridge as to size and character, and be such as to support a finding that it was a substantial obstruction to travel. Plaintiff does not meet the burden of proof by showing such surface, even though a witness may refer to it as consisting of little ridges or bumps. . . ."

*Rinaldi v. Levine, supra* at 79–80, 176 A.2d at 626, quoting *Kohler v. Penn Township*, 305 Pa. 330, 332, 157 A. 681 (1931).

■ Appellant testified that no part of the sidewalk had been cleared off; that it was "icy, . . . lumpy, hilly," with ruts of 3–4 inches. N.T. 18. This was a sufficient description of the size and character of the ridges to present to the jury the question of whether there was "a danger to the public." *Rinaldi v. Levine, supra.* The lower court's hesitation was based on its opinion that there was no testimony by appellant that the condition of the sidewalk created "a substantial obstruction to travel." Lower Court Opinion

at 3. This phrase is in the nature of a conclusion or opinion, and could not have been expressed by appellant in so many words; appellant's description of the sidewalk and of the ridges of ice was sufficient to permit the jury to conclude that "a substantial obstruction to travel" existed.

–2–

■ With respect to the proof that the property owner had notice:

In Pennsylvania, an abutting property owner is primarily liable for the removal of ice and snow upon the sidewalk. *Solinsky v. Wilkes-Barre*, 375 Pa. 87, 93, 99 A.2d 570; *Vinnacombe v. Philadelphia (and American Stores Co.)*, 297 Pa. 564, 147 A. 826; *Beebe et al. v. City of Philadelphia*, 312 Pa. 214, 216, 167 A. 570. However the law, wisely, does not require that such abutting owner keep the sidewalk free from snow and ice at all times: to hold otherwise would require the impossible in view of the climatic conditions. . . . Snow and ice upon a pavement create merely transient danger and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition. *See Philadelphia v. Bergdoll*, 252 Pa. 545, 551, 97 A. 736; *Goodman v. Corn Exchange National Bank & Trust Co. et al., supra* [331 Pa. 587, 200 A. 642].

*Rinaldi v. Levine, supra*, 406 Pa. at 77–78, 176 A.2d at 625.

■■ As owners, appellees rented the premises to the Bureau of Employment Security of Pennsylvania. Under the terms of the lease appellees had the responsibility of cleaning the sidewalks adjacent to the building. Notice to appellees may be inferred from proof that the dangerous condition was allowed to remain for an unreasonable length of time; notice will be imputed to a private landlord in less time than it will be to a municipality. *See Schultz v. Pivar*, 370 Pa. 271, 88 A.2d 74 (1952); *Silberman v. Dubin*, 155 Pa.Super. 3, 36 A.2d 854 (1944).

■ The accident occurred on Thursday at about 2:00 p. m. Appellant testified that it had snowed "[s]ometime Tuesday night as far as I know.", N.T. 12, "with an accumulation of 4–5 inches." N.T. 35. The lower court correctly pointed out that there was no testimony as to when it started snowing, or as to when it stopped. (The court also stated that there was no testimony as to how much it had snowed; this was incorrect.) However, appellant did describe the weather conditions as follows: "Well, it was snow, and it thawed and melted and refroze again." N.T. 18. *And see* N.T. 35. From this testimony the jury could infer that because there had been sufficient time from the snowstorm to the incident to allow the snow to freeze, thaw, melt, and freeze once again, a sufficient amount of time had elapsed for the owners to have notice of the condition.

■ In addition, the following occurred on cross-examination:

Q. What was the condition of those other sidewalks?

A. The sidewalks in general were clear.

Q. That was at the block preceding the block you were in?

A. Yes.

Q. How about the left side of the 200 block; what were the conditions of the sidewalks there as you were proceeding north on Lime?

A. I can't say I noticed because I'm looking for a place to park and pull in.

Q. Okay. Now, how about up to the Bureau of Employment Security, from the corner to up to that point; what was the condition of the sidewalks there?

A. Generally clear.

Q. And then when you get to the Bureau of Employment Security, what was the condition of the sidewalk in front of Lime Street?

A. It was icy.

Q. It was icy? How about just beyond?

MR. SHERTZER: Just beyond the Bureau of Employment Security?

THE WITNESS: I don't know. I can't say.

N.T. 24–25.

From this testimony the jury could infer that since the general condition of the other sidewalks was clear, sufficient time had elapsed for the owners to have notice and the opportunity to rectify the dangerous condition, and therefore the same was so of appellees.

–3–

With respect to proof of causation:

In *Sellers v. Cline*, 160 Pa.Super. 85, 86, 49 A.2d 873, 874, it was said: "It would appear, therefore, that in order to recover against the defendant the plaintiffs are obliged to prove not only evidence of a dangerous condition in the form of hills and ridges, but must show that the dangerous obstructions on the sidewalk were the actual cause of the fall". *See also Zieg v. Pittsburgh, supra,* 348 Pa. [155] at page 157, 34 A.2d [511] at page 513; *Miller v. City Ice & Fuel Co., supra,* 363 Pa. [182] at page 184, 69 A.2d [140] at page 140; *Hillelson v. Renner,* 183 Pa.Super. 148, 130 A.2d 212.

*Rinaldi v. Levine, supra* 406 Pa. at 80–81, 176 A.2d at 626.

Appellant testified as follows: "Well, my foot caught, slipped off one of the ridges, and when I went down I sit down on my left ankle, my left foot." N.T. 20. The lower court in its opinion quoted the following testimony:

Q. Well, my question is did you slip on one of these ridges?

A. Well, I stepped on something that made my foot slip off and go down. It just went out from under me.

Q. You are assuming it's one of these ridges; is that right?

A. That's all that was on the sidewalk.

Q. Solid ridges?

A. Well, it was quite a few. There is a lot of people in and out of that place.

Q. Pardon me?

A. There is a lot of people use that walk.

Q. A lot of people use that sidewalk. Again, my question is, are you simply assuming that's what you stepped on?

A. Yes.

N.T. 39..

The lower court then concluded:

As the foregoing testimony and as other testimony revealed, the plaintiff actually had no idea what caused his fall. He most honestly and accurately described what happened when he stated in answer to the question regarding a ridge of ice, "Did you see it?," "No, I felt myself go down. That's all I know." (p. 38) For this reason alone, the nonsuit should be sustained.

Lower court opinion at 5–6.

There was, however, additional testimony which showed that appellant in fact knew more than only that he had fallen:

Q. Now, just now today at this trial, I think you said that your foot slipped on one of the ridges; is that right?

A. Yes, sir.

Q. Now, how do you know that that's what you were stepping on?

A. Because my foot slipped off. I know it went into a hole.

Q. Did you see it?

A. I could feel it.

Q. The question is: Did you see it?

A. No. I felt myself go down. That's all I know.

Q. You felt yourself go down?

A. (Indicates yes.)

N.T. 37–38.

 The lower court did not refer to the principle that apparent conflicts in a witness's testimony must on a motion for nonsuit be resolved in the plaintiff's favor, it being left to the jury to make the final resolution. *See* cases cited *supra*, and *Cardone v. Sheldon Hotel Corp.*, 160

Pa.Super. 193, 50 A.2d 700 (1947). When this principle is applied to appellant's testimony it will be seen that what appellant said was that he *felt* his foot slip on one of the ridges. His admission that he did not *see* his foot slip was not an admission that (in the lower court's words) he "actually had no idea what caused his fall."

> A plaintiff may recover though the evidence of proximate cause is wholly circumstantial, when the fact is "deducible as a reasonable inference from the facts and conditions directly proved, and it cannot justly be classed as a mere conjecture or surmise or guess. . . . The conclusions and tests of every day experience must control the standards of legal logic." *Mars v. Phila. Rapid Transit Co.,* 303 Pa. 80, 154 A. 290.

> *Silberman v. Dubin, supra,* 155 Pa.Super. at 6–7, 36 A.2d at 856.

It is a reasonable inference that if in falling one feels one's foot slip on a 3 to 4 inch ridge of ice, it was the condition of the ice that caused the fall.

–B–

The lower court also concluded that the nonsuit was proper because appellant was contributorily negligent in that he "obviously chose the more dangerous route over a comparatively safe one." Lower Court Opinion at 6.

It should be borne in mind when reviewing the evidence that "contributory negligence as a matter of law should be declared only in a very clear case and only where the evidence is so clear and palpable that there is no room for fair and sensible men to differ in their conclusions as to its existence." *Bacsick v. Barnes,* 234 Pa.Super. 616, 624, 341 A.2d 157, 162 (1975), quoting *Dougherty v. Philadelphia National Bank,* 408 Pa. 342, 344, 184 A.2d 238, 239 (1962).

> The "choice of paths" doctrine, [ ] was defined in *Garvin v. Pittsburgh,* 161 Pa.Super. 140, 53 A.2d 906 (1947), as follows: "It is well settled that where a person has a

choice of two ways, one of which is perfectly safe and the other subject to obvious risks, and voluntarily chooses the latter and is injured, he is guilty of contributory negligence." 161 Pa.Super. at 143, 53 A.2d at 908, quoting *Graham v. Reynoldsville Borough*, 132 Pa.Super. 296, 300, 200 A. 681, 682–683 (1938).

*Eller v. Work*, 233 Pa.Super. 186, 189, 336 A.2d 645, 647 (1975).

The lower court held that appellant was contributorily negligent as a matter of law because he stopped his car four feet short of the railing, instead of next to it, and because he walked around the rear of the car, instead of the front, and was therefore further from the railing. Even if appellant had parked right next to the railing he would still have been required to walk around the car and step onto the sidewalk. It is true that if appellant had walked around the front of the car rather than the rear, he would have been closer to the railing, and thereby a handhold; exactly how much closer was not established. However, by either route appellant would have been required to walk on the same dangerous condition on the sidewalk. Although with hindsight it might appear that a route around the front of the car might have been somewhat safer, it is certainly not apparent that had he used that route appellant would not have fallen while walking the 3 to 4 feet from the front of the car to the railing. In any case, it may not be concluded, as a matter of law, that appellant rejected a "perfectly safe" route in favor of one with "obvious risks."

Reversed and remanded for a new trial.

PRICE, J., dissents and would affirm. See PRICE, J., dissenting opinion in *McMillan v. Mountain Laurel Racing, Inc.*, 240 Pa.Super. 248 at 261, 367 A.2d 1106 at 1112 (1976).

WATKINS, former President Judge, did not participate in the consideration or decision of this case.