417 A.2d 1196

**Evalee CLAYTOR**

**v.**

**Choice DURHAM, Marjorie Durham, and City of Philadelphia, (two cases).**

**Appeal of CITY OF PHILADELPHIA.**

**Appeal of Choice DURHAM and Marjorie Durham.**

Superior Court of Pennsylvania.

Argued March 22, 1979.

Filed Jan. 4, 1980.

572

Barbara R. Axelrod, Assistant City Solicitor, Philadelphia, for appellant.

William L. Akers, Philadelphia, for appellee.

Before VAN der VOORT, HESTER and WIEAND, JJ.

WIEAND, Justice:

Evalee Claytor, appellee, sustained a fractured hip when she slipped and fell on a patch of ice on a Philadelphia sidewalk. Separate actions in trespass against the City of Philadelphia and against Choice and Marjorie Durham, who owned the premises on which the sidewalk was located, were consolidated and tried non-jury before the Honorable Theodore C. Smith. A verdict for $40,000.00 was entered jointly against the City and the property owners, exceptions were dismissed, and both defendants appealed.

On the morning of February 8, 1974, appellee left her apartment to do some shopping. While she was shopping it began to snow, and she decided to return home. She took a bus and returned to the bus stop on Ardleigh Street, from where she walked along Ardleigh Street toward her apartment. Although she had covered the same ground earlier, she now found the sidewalk covered with a light layer of snow. She slipped on ice and fell in front of the Durham residence at 6339 Ardleigh Street.

Testimony at trial from appellee and from a passerby who came to her aid was that the ice which caused appellee's fall had accumulated in a depression in the sidewalk and had been covered by snow. It was shown by photographs and further testimony that the depression had been created by

the separation of two concrete slabs. One of the slabs had been pushed up several inches from its original position by the roots of a shade tree standing at the curb. In July or August of 1966, the City had notified the Durhams of the need to repair this defect in the sidewalk. The Durhams had engaged a contractor who added a triangular cement patch which formed, in effect, a ramp between the separated slabs. The City had then inspected and approved the repair. However, the tree roots continued to grow from the time of the repair to the time of the accident, with the result that the slab had been raised further and surfaced above the level of the repair patch. A depression had also formed at the end of the repair patch, and here it was that water accumulated and froze.

Weather reports admitted into evidence showed that for four days prior to February 8, 1974, the City had experienced both substantial precipitation and freezing temperatures. Appellee testified that when she had gone shopping earlier that day she had noticed patches of ice at various places on Ardleigh Street. On her return trip, however, they could not be discerned because they were hidden by the covering of snow.

After the verdict, appellants moved for judgment n. o. v. They contended then, as they do on appeal, that the evidence showed a general slippery condition and that appellee failed to sustain her burden of showing hills and ridges of ice and snow sufficient to constitute notice to appellants of a dangerous condition. See, e. g., *Williams v. Schultz*, 429 Pa. 429, 240 A.2d 812 (1968); *Rinaldi v. Levine*, 406 Pa. 74, 176 A.2d 623 (1962); *Strother v. Binkele*, 256 Pa.Super. 404, 389 A.2d 1186 (1978). There is no merit in this contention. The evidence disclosed an artificially created defect in the sidewalk which permitted ice to accumulate and cause a dangerous condition. This requires the application of a different standard.[1]

1. The City of Philadelphia has argued that they were not apprised prior to trial that appellee would proceed on the underlying defect theory and that, therefore, we should not consider it. Our review of

In *Reedy v. Pittsburgh*, 363 Pa. 365, 69 A.2d 93 (1949), the plaintiff was injured when she fell on a patch of ice concealed by a fresh snowfall. The ice had formed because a defective rainspout had permitted water to accumulate on the sidewalk. The court held that where the defect had existed for several years, and the owner had had notice and failed to correct the defect, there was sufficient evidence to submit the issue of the owner's negligence to the jury. In such a case, it was not necessary for the plaintiff to show how long the particular patch of ice had existed.

This concept was further clarified in *Casey v. Singer*, 372 Pa. 284, 93 A.2d 470 (1953). In that case, a depression in the sidewalk in front of defendant's property had filled with water which froze to form a patch of ice. Plaintiff slipped and fell on the ice at a time when it was covered with a layer of dust. The Court concluded that the *Reedy* principle was applicable. The custodian of the property had known that a defect existed and failed to correct it; he knew that water tended to collect in the defect and could expect that cold weather would cause the water to freeze. Thus, it was foreseeable that a pedestrian would slip and fall. Such a situation, the Court concluded, differed from a general slippery condition. As such, the right to recover did not depend upon a showing of hills and ridges of ice.

When we consider appellants' motions for judgment n. o. v., we are required to consider the evidence, together with all reasonable inferences therefrom, in the light most favorable to the verdict winner. *Miller v. Checker Yellow Cab Co. of Bethlehem*, 465 Pa. 82, 348 A.2d 128 (1975). Applying this standard, appellee's evidence was clearly adequate to support the findings of the trial judge. The

the pleadings indicates that this theory was discernible from the facts pleaded. Appellee was not required to identify in her complaint the legal theories on which she was proceeding. Assuming that adequate facts had been pleaded, the obligation to discover applicable legal principles and theories was on the court. *DelConte v. Stefonick*, 268 Pa.Super. 572, 408 A.2d 1151 (1979). The trial court ably ascertained the correct theory on which appellee's cause of action was based.

evidence showed a defect which had existed and of which the property owners had knowledge. They also knew or should have known that the defect allowed an artificial accumulation of water which froze in cold weather. From this evidence the trier of the facts could find negligence.

The City of Philadelphia contends, however, that appellee was guilty of contributory negligence. Appellee did testify that she had seen patches of ice along Ardleigh Street when she had gone shopping. On her return, however, the sidewalk was covered with snow. Her knowledge that some icy spots existed along the street did not require that she walk on the sidewalk at her peril. She was not required to remember and recall the precise location of icy spots after their visibility had been destroyed by a blanket of snow. Appellee's decision to proceed along the sidewalk rather than step into the roadway was not so unreasonable as to make her contributorily negligent as a matter of law. See: *Strother v. Binkele*, supra. Appellee's knowledge of possible hazards and her choice of paths were issues for resolution by the trier of facts. Contributory negligence can be determined as a matter of law only where it "is so clearly revealed that there is no room for reasonable disagreement as to its existence". *Lavely v. Wolota*, 253 Pa.Super. 196, 202, 384 A.2d 1298, 1302 (1978).

The final question raised on appeal is whether the trial court correctly found appellants to be jointly liable. The Durhams contend that they should have been exonerated because they had repaired their sidewalk area in accordance with requirements determined by the City of Philadelphia. This argument, however, ignores the fact that from the time of the initial repair until the time of appellee's fall, the condition of the walk did not remain static. The condition continually became more pronounced, and the Durhams were chargeable with knowledge of the changing conditions. Moreover, it was not error to exclude evidence of repair specifications required by the City of Philadelphia eight years prior to the fall involved in the instant action.

The City argues that it is only secondarily liable, and that primary liability rests upon the property owners. With this we agree. The law has been clearly stated in *Flynn v. Chester*, 429 Pa. 170, 173, 239 A.2d 322, 323–4 (1968), where the Court said: "The general rule is that the liability, if any, of a municipality for an injury due to a defective or dangerous sidewalk is only a secondary one; the primary obligation rests with the abutting property owners." The abutting property owner is also primarily liable for the removal of ice and snow from the sidewalks. *Rinaldi v. Levine*, supra. Thus, when a plaintiff is awarded damages against a municipality because of a defective condition of a sidewalk, the municipality is entitled to a verdict over against the abutting property owner "upon whom the ultimate burden rests". *Brady v. City of Philadelphia*, 156 Pa.Super. 607, 41 A.2d 355 (1945). The lower court was in error when it found appellants jointly liable. Although the evidence supported a finding that the City and the property owners were negligent, the City was entitled to a verdict over against the property owners, Choice and Marjorie Durham.

Affirmed in part, reversed in part, and remanded for the entry of judgments in accordance with the foregoing opinion.