## Gallagher v. Dalsania

C.P. of Lehigh County, no. 2005-C-1938.

*David J. Selingo,* for plaintiff.
*John W. Ashley,* for defendants.

McGINLEY, *J.,* August 23, 2006—Before the court is the plaintiff's motion for post-trial relief alleging an error of law in the court's granting of the defendants' motion for nonsuit at trial. The plaintiff argues that the trial court

improperly considered unfavorable evidence to the plaintiff.

## FACTUAL BACKGROUND

The plaintiff, Marigrace Gallagher, sustained injuries when she fell in the home of the defendants, Harilal and Nayantara Dalsania on December 19, 2003.

At the time of the fall, the plaintiff was at the defendants' home for the purpose of dog-sitting the defendants' dog, Daisy, while the defendants went out for the evening. The plaintiff had been at the defendants' home many times prior to the incident, and on occasion the plaintiff even took the time to clean the Dalsanias' home, including around the area where the fall occurred.

In the Dalsanias' house, the kitchen/dinette area is connected to the front foyer. An archway separates the foyer and the kitchen/dinette area. There is also a metal transition strip on the floor that divides the two rooms. Although the foyer and the kitchen areas have the same beige flooring, there is a slight elevation difference between the kitchen/dinette area and the foyer.

On the day of her fall, the plaintiff entered the defendants' home and had a conversation with Mrs. Dalsania about the icicle lights outside the Dalsanias' home. They walked from the dinette area through the foyer and to the front doorway to look at the icicle lights. The plaintiff and Mrs. Dalsania then went back into the kitchen. The plaintiff then decided to go to the front of the house to once again admire the lights hanging outside. As the plaintiff proceeded from the kitchen to the foyer, the plaintiff testified that her foot stayed in one place but her body went forward and she fell to the ground, causing extensive injuries. Mrs. Dalsania did not see the plaintiff fall.

Testimony adduced at trial relating to the facts of this case will be discussed in detail below.

## PROCEDURAL HISTORY

The plaintiff filed a complaint in this matter on March 30, 2005, in Luzerne County. By a court order dated June 8, 2005, this matter was transferred to Lehigh County.

Trial commenced on May 3, 2006. The plaintiff completed the presentation of evidence on May 4, 2006. At this point, the defendants motioned the court for a compulsory nonsuit. The court granted the defendants' motion for nonsuit on May 4, 2006.

The plaintiff filed its motion for post-trial relief to remove the nonsuit on May 9, 2006. On May 10, 2006, the defendants filed their answer to plaintiff's motion for post-trial relief to remove a nonsuit. The plaintiff filed a brief in support of the motion for post-trial relief on June 28, 2006. The defendants filed their brief in support of their opposition to the plaintiff's post-trial motion on July 5, 2006. Argument was heard on August 2, 2006.

## DISCUSSION

In its motion for post-trial relief, the plaintiff argues that the court committed an error of law in granting the defendants' motion for nonsuit because in so doing, the court relied upon testimony introduced by the defendants that was unfavorable to the plaintiff. The plaintiff argues that had the trial court limited its scrutiny to evidence produced by the plaintiff and evidence favoring the plaintiff produced by the defendants, the trial court would have concluded that the plaintiff established a prima facie showing against the defendants in this negligence action.

Pursuant to Pa.R.C.P. 230.1(a), a motion for nonsuit may be granted on oral motion of the defendant, if at the close of the plaintiff's case on liability, the plaintiff has failed to establish a right to relief. Pa.R.C.P. 230.1(a)(1). Furthermore, "the court in deciding the motion shall consider only evidence which was introduced by the plaintiff and any evidence favorable to the plaintiff introduced by the defendant prior to the close of the plaintiff's case." Pa.R.C.P. 230.1(a)(2).

"A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiffs' [sic] evidence and may be entered only in cases where it is clear that the plaintiff has not established a cause of action; in making this determination, the plaintiff must be given the benefit of all reasonable inferences arising from the evidence. When so viewed, a nonsuit is properly entered if the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action; it is the duty of the trial court to make this determination prior to the submission of the case to the jury. When this court reviews the grant of a nonsuit, we must resolve all conflicts in the evidence in favor of the party against whom the nonsuit was entered. A compulsory nonsuit is proper only where the facts and circumstances compel the conclusion that the defendants are not liable upon the cause of action pleaded by the plaintiff." *Shay v. Flight C Helicopter Services Inc.,* 822 A.2d 1, 13 (Pa. Super. 2003) (quoting *Parker v. Freilich,* 803 A.2d 738, 744-45 (Pa. Super. 2002)).

"It is hornbook law that, as stated in *Lanni v. Pennsylvania Railroad Company,* 371 Pa. 106, 109, 110, 88 A.2d 887, 888: 'the mere happening of an accident is no evidence of negligence. . . . The plaintiff has the two-fold

burden of proving that the defendant was negligent and that his negligence was the proximate cause of her accident. . . .' A jury is not permitted, however, to speculate or guess; conjecture, guess or suspicion do not amount to proof." *Freund v. Hyman,* 377 Pa. 35, 37, 103 A.2d 658, 659 (1954).

The plaintiff is pursuing a claim of negligence against the defendants in this lawsuit.

"The requisite elements of negligence are well established: They include:

"a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal connection between the conduct and the resulting injury; and the actual loss or damage resulting to the interest of another." *Orner v. Mallick,* 432 Pa. Super. 580, 583, 639 A.2d 491, 492 (1994).

During direct examination, the plaintiff testified as follows regarding her fall:

"Q: Can you tell us, you said you never made it towards the front. Can you tell us what happened?

"A: All I can remember is my feet stayed here, my body went forward, and I'm going oh, no, and the first thing that scared me was my heart. I thought something had happened to my heart. Then—I didn't pass out. I asked Nayan, I said—I did, I said, what the hell just happened?

"Because I didn't pass out, but I said to her, did I pass out? And I know in my heart that I didn't. But I thought instantaneously, I know that didn't happen. But it may

have. She said, no, everything's fine. I said, what happened? And my ankles were out like this.

"Q: You know your feet got caught?

"A: My feet didn't go anywhere, and I screamed, don't touch my feet. I screamed that. The horrible pain that I had, and then Daisy was running around, and I said get Daisy away from my feet.

"Q: Marigrace, can you tell us what foot got caught?

"A: You know, to be honest with, I don't know. I think it was my right one. But I don't know because they were both—this—my right one was broken, and my left one was fractured." (Trial tr. vol. 1, 90:3-91:4, May 3, 2006.)

On redirect examination the plaintiff gave the following testimony pertaining to the cause of her fall:

"Q: Now, between the kitchen table area and where you ended up against the closets, where did your foot get caught?

"A: At the little strip there on the floor.

"Q: You know that?

"A: Yeah, it's there. And there is no other place to get caught on it." (Trial tr. vol. 1, 117:21-118:2, May 3, 2006.)

The plaintiff contends that based upon this testimony, the plaintiff has provided sufficient evidence for a jury to conclude that the metal transition strip in the defendants' home caused the plaintiff to fall.

"However, [in appraising a nonsuit,] the court may consider testimony elicited upon cross-examination, as long as that cross-examination does not exceed the scope

of direct examination." *In re McCune,* 705 A.2d 861, 866 (Pa. Super. 1997) (citing *Bowser v. Lee Hospital,* 399 Pa. Super. 332, 582 A.2d 369 (1990)); see also, *Strother v. Binkele,* 256 Pa. Super. 404, 389 A.2d 1186 (1978). During cross-examination, the plaintiff gave the following testimony as to the cause of her fall:

"Q: Ma'am, that night when you were walking back and forth to see the icicle lights, were you watching where you were walking?

"A: I was just looking at the lights.

"Q: Well, the lights—

"A: I mean, I don't walk and look at the floor if that's what you mean. I walk straight ahead. I don't walk and look down.

"Q: So you didn't look down at all as you were walking?

"A: I never do.

"Q: And you don't know what your foot caught on, correct?

"A: No, I don't, to be honest with you.

"Q: You have no idea?

"A: I have no idea. No I don't. But something made me fall." (Trial tr. vol. 1, 116:12-117:3, May 3, 2006.)

Shortly thereafter, the following testimony was elicited on recross-examination:

"Q: Ma'am, you weren't watching where you were walking, you testified to that, correct?

"A: Yeah, I was just walking towards the front door.

"Q: So you don't know what your foot got caught on, correct?

"A: No, I don't.

"Q: And you don't know if you were stepping on that transition strip when your foot got caught, do you?

"A: It could have been caught on Daisy's carpet.

"Q: You don't know what your foot got caught on? (Whereupon, the witness shook her head.)

"Mr. Ashley: That's all I have.

"Witness: And they always had their flip flops too, it could have got caught on their shoes." (Trial tr. vol. 1, 118:23-119:16, May 3, 2006.)

The Pennsylvania Supreme Court's decision in *Freund v. Hyman,* 377 Pa. 35, 103 A.2d 658 (1954) is controlling in this case. In *Freund,* the plaintiff testified that she fell on a raised step while walking outdoors. There were no witnesses available to testify as to how, if at all, the step caused the plaintiff to fall. In *Freund,* the plaintiff was able to offer testimony only that a raised step was involved in her fall. The Supreme Court upheld the trial court's granting of the nonsuit because there was no evidence introduced that the step caused the fall.

Here, the plaintiff was uncertain what caused her feet to stay put while her body continued forward. In the first instance, the plaintiff believed that her fall was caused by a problem with her heart. Then, the plaintiff testified that she believed that she caught her feet on "the little strip there on the floor," (trial tr. vol. 1, 117:24, May 3, 2006) because "it's there. And there is no other place to get caught on it." (Trial tr. vol. 1, 118:1-2, May 3, 2006.) The plaintiff's testimony on recross-examination is further illustra-

tive of the speculative nature of what caused the plaintiff's fall:

"Q: So you don't know what your foot got caught on, correct?

"A: No, I don't.

"Q: And you don't know if you were stepping on that transition strip when your foot got caught, do you?

"A: It could have been caught on Daisy's carpet.

"Q: You don't know what your foot got caught on? (Whereupon, the witness shook her head.)

"Mr. Ashley: That's all I have.

"Witness: And they always had their flip flops too, it could have got caught on their shoes." (Trial tr. vol. 1, 119:2-16, May 3, 2006.)

It is clear that the plaintiff was merely speculating as to what caused her fall. There was no eyewitness testimony as to what condition on the floor, if any, actually caused the fall. The plaintiff argues that she tripped over the transition strip merely because it was there, but she gave equal billing to her heart, the dog's carpet and the Dalsanias' flip flops. We are left with a situation akin to that of *Freund,* where there was insufficient evidence elicited connecting an alleged defective condition with the plaintiff's fall.[1] There simply was no evidence introduced beyond mere speculation that the transition strip made contact with the plaintiff's feet. Even when examining the evidence in such

---

[1]. However, unlike *Freund,* the plaintiff here was unable to definitively testify as to the exact cause of her fall. The plaintiff's testimony as to the proximate cause of the fall in this case was speculative, whereas the plaintiff in *Freund* was certain that a raised step was involved in her fall. This matter has an added element of speculation with respect to proximate causation that was unseen in *Freund.*

a light that all reasonable inferences are given to the plaintiff, it is clear that the plaintiff has failed to meet its burden of demonstrating that the allegedly negligently installed and/or defective transition strip was the proximate cause of the plaintiff's injuries.

The closest case favoring the plaintiff's position is the Superior Court's decision in *Strother v. Binkele,* 256 Pa. Super. 404, 389 A.2d 1186 (1978). *Strother,* however, is inapposite to this matter. In *Strother,* testimony was adduced showing that the plaintiff had stepped onto a sidewalk covered with snow and ice ridges. Although the *Strother* plaintiff was not watching where he was walking, he testified that he knew that a snow ridge caused his fall because he felt something underfoot that made his foot slide off and go down into a hole. See *Strother,* 256 Pa. Super. at 413-14, 389 A.2d at 1190-91. In concluding that a nonsuit was improper, the court reasoned:

"[the plaintiff's] admission that he did not *see* his foot slip was not an admission that (in the lower court's words) he 'actually had no idea what caused his fall.'

"A plaintiff may recover though the evidence of proximate cause is wholly circumstantial, when the fact is 'deducible as a reasonable inference from the facts and conditions directly proved, and it cannot justly be classed as a mere conjecture or surmise or guess. . . . The conclusions and tests of every day experience must control the standards of legal logic.' *Mars v. Philadelphia Rapid Transit Co.,* 303 Pa. 80, 154 A. 290 (1931). *Silberman v. Dubin,* 155 Pa. Super. 3, 6-7, 36 A.2d 854, 856 (1944).

"It is a reasonable inference that if in falling one feels one's foot slip on a 3- to 4-inch ridge of ice, it was the condition of the ice that caused the fall." *Strother,* 256 Pa. Super. at 415, 389 A.2d at 1191.

In *Strother,* testimony indicated that the plaintiff's foot slipped off a raised region and slid into a hole. The plaintiff in the matter at hand, however, testified that her feet simply stopped and that she did not know what caused her to fall. In short, the plaintiff did not testify that she tripped over the transition strip, she only testified that the transition strip was in the area of her fall. We are therefore lacking the tactile specificity as to the cause of the fall that was developed by the plaintiff in *Strother.* Moreover, unlike *Strother,* our plaintiff admitted on cross-examination and recross-examination that she did not know what caused her feet to stop. (See trial tr. vol. 1, 116:23-117:3, May 3, 2006; see also, trial tr. vol. 1, 119:2-4, May 3, 2006.)

*Strother* also stands for the proposition that "apparent conflicts in a witness' testimony must on a motion for nonsuit be resolved in the plaintiff's favor, it being left to the jury to make the final resolution." S*trother v. Binkele,* 256 Pa. Super. 404, 414, 389 A.2d 1186, 1191 (1978). We are not presented with conflicting testimony, however. Instead, the plaintiff's testimony was consistently speculative. The plaintiff did not present conflicting narratives as to what caused her to fall; she offered only vague supposition as to what could have caused the fall. Specifically, the plaintiff postulated that the cause of her fall could have been the transition strip, Daisy's carpet, or the Dalsanias' sandals. (See trial tr. vol. 1, 119:2-16, May 3, 2006.) The plaintiff's consistently speculative testimony should not have been presented to the jury.

Even after giving the plaintiff the benefit of all reasonable inferences arising from the evidence it is clear that the plaintiff has failed to establish a cause of action. The plaintiff's motion for post-trial relief is denied.